HADLOCK, P. J.
*666 Defendant broke into his former girlfriend's home and damaged her property. He was charged with first-degree burglary constituting domestic violence (Count 1), second-degree criminal mischief (Count 2), third-degree theft (Count 3), and witness tampering (Count 4). The state charged the burglary count on a theory that defendant entered the victim's home with the intention "to commit the crime of Criminal Mischief therein." Following a jury trial, defendant moved for a judgment of acquittal on both the burglary and the witness-tampering charges; the court granted the motion as to the latter charge but not as to the former. The jury found defendant guilty of burglary and criminal mischief and not guilty of theft. The court entered a judgment in accordance with that verdict.
Defendant raises two arguments on appeal. First, he makes an unpreserved argument that the trial court was required to give a jury-concurrence instruction in association with the criminal-mischief charge. We reject that argument without discussion. Second, defendant contends that the trial court erred by denying his motion for judgment of acquittal on the burglary charge because the state did not prove that he had the intention to commit criminal mischief when he entered the victim's home. We agree. Accordingly, we reverse the burglary conviction and remand for entry of a judgment that includes a conviction for the lesser-included offense of first-degree criminal trespass and for resentencing; we otherwise affirm.
When reviewing the denial of a motion for judgment of acquittal, we "view the evidence in the light most favorable to the state, giving the state the benefit of all reasonable inferences that may properly be drawn from that evidence, to determine whether any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt." State v. Miller , 196 Or. App. 354, 356, 103 P.3d 112 (2004), rev. den. , 338 Or. 488, 113 P.3d 434 (2005) (citations omitted). We set out the facts in keeping with that standard of review.
Defendant is the victim's former boyfriend and they have two young children together. Defendant and the victim *667 have had a tumultuous relationship involving many arguments, separations, and reunifications. They last lived together about three years before trial, and defendant has never lived in the house where the victim resides now. The victim did sometimes allow defendant to visit the home, either to spend the night or to visit their children. Defendant had most recently visited the children about one week before the incident that resulted in the charges against him. At that time, the victim told defendant that he was no longer welcomed at her house.
On the day in question, defendant arrived unexpectedly at the victim's home as she prepared for her shift at work, which started in the early afternoon. Defendant wanted to talk, but the victim told him that he could not come inside. He became upset and walked off. The victim feared that defendant might break into the house, so she locked all the windows and doors. As she drove to work, the victim saw defendant at a MAX stop two blocks from her house.
Defendant sent three text messages to the victim shortly after she left for work. The victim interpreted those messages as defendant *390 expressing his feeling that the victim "didn't really try to make [their] relationship work" and that defendant "was the only one trying." Among other things, defendant accused the victim of never taking the time to listen to him; he also said that he "wish[ed] things could be different but you've proved me wrong you selfish ass bitch. Love doesn't conquer all." An hour and a half later, defendant sent another text message stating, "I'll see you when I see you! Too bad you never wanted to listen." That message also included a photograph of defendant's arm, which he had cut deeply; the picture showed a large, bloody gash and dripping blood. The victim thought that defendant was trying to get her attention because "he had done this a lot in the past."
The victim called defendant's mother because she was concerned by the suicidal nature of defendant's text. She also forwarded some of defendant's text messages-including the one showing defendant's cut arm-to two of her friends, who suspected that defendant was at the victim's home. Those friends, named Warth and Hibbert, called 9-1-1.
*668 Police Officer Hardy was dispatched to the victim's house in response to a report that somebody might be in a state of crisis and might have hurt himself. As Hardy and his partner knocked on the front door, defendant stepped out of an attached garage, but then ran back inside. When Hardy went into the garage, defendant went into the house and shut the door. Defendant then ran out of the back of the house and away from the home, jumping fences.
Warth and Hibbert then arrived at the house and entered it, along with Hardy. The three saw blood on the floor and furniture. Warth also noticed that the victim's television screen had been damaged and saw two kitchen knives in the children's room. Warth contacted the victim, who was still at work, and told her of the discoveries. At some point, Warth and Hardy spotted defendant in bushes next to the driveway; he ran off when Hardy tried to contact him. After another officer stopped defendant, Hardy observed a "giant wound" in defendant's arm. Hardy advised defendant of his Miranda rights, decided to place defendant "on a hold at the hospital to get treatment," and cited him for criminal trespass. Defendant told Hardy that he had cut himself accidentally with a paring knife and that he had had the victim's permission to be in the home for one hour earlier that day to take a shower, but had stayed when the victim left for work. After the victim left, defendant said, he left to get some beers and came back to the house to drink them.
When the victim came home after her shift ended, she saw the blood and shattered television screen; she also discovered that lamps in her bedroom had been broken, that the back door had been broken out of its frame, and that piggy banks were on the floor and appeared to have been emptied. In addition, there were empty beer bottles around the house that had not been in the house (either empty or full) when she left for work. A knife that the victim usually kept in a kitchen drawer was on the floor by the front door. The next day, the victim received a text message from defendant asking her not to talk to the police anymore and to "try and talk to the da and drop this." Defendant also asserted, "I'll get caught up on child support and pay you for what I owe you on other things."
*669 As noted, defendant was charged with crimes including first-degree burglary and second-degree criminal mischief. The criminal-mischief charge was premised on defendant having intentionally damaged the victim's property. The burglary charge was premised on defendant having had the intention to commit criminal mischief in the victim's home when he unlawfully entered or remained in that dwelling.
The question before us is whether defendant was entitled to a judgment of acquittal on the burglary charge. A person commits first-degree burglary "if the person enters or remains unlawfully in a building with intent to commit a crime therein," ORS 164.215(1), and the building is a dwelling. ORS 164.225(1). "So defined, the crime of first-degree burglary constitutes an aggravated form of criminal trespass that requires proof of three elements: criminal trespass, of a dwelling, with the intent to commit a crime therein."
*391 State v. McKnight , 293 Or. App. 274, 276, 426 P.3d 669 (2018) (internal quotation marks and citation omitted). In addition, "there must be a temporal connection between the defendant's intent to commit a crime and the initiation of the defendant's trespass." Id. Specifically, "the requisite 'intent to commit a crime therein' must be present at the start of the defendant's unlawful trespass, whether that trespass consisted of an initial unlawful entry or an unlawful remaining after an initial lawful entry." Id. (quoting State v. J. N. S. , 258 Or. App. 310, 318, 308 P.3d 1112 (2013) ) (emphasis added).[1]
Here, it is undisputed that the record supports the first two elements of first-degree burglary: that defendant unlawfully entered the victim's home and that her home is a dwelling. Defendant's argument is that the record does not include evidence sufficient to support the third element; that is, he contends that there is not sufficient evidence to *670 support an inference that he intended to commit criminal mischief when he entered the victim's home. He points out that no evidence demonstrates where he was when he sent the initial text messages to the victim, that the empty beer bottles suggest that he "spent a fair amount of time" in the victim's home, and that neither the damage inside the home nor his text messages to the victim demonstrate that he already had formed the intention to damage the victim's property whenever it was that he unlawfully entered her house. In response, the state argues that the evidence-particularly, that related to defendant's history with the victim, his anger with her that day, and the damage he caused to the victim's property-adequately supports a finding that he "formed the intent to commit criminal mischief before he unlawfully entered victim's home."
We agree with defendant. To establish that a person has committed burglary, the state must prove that the defendant committed a trespass with the "intent to commit a particular crime in the building that he unlawfully entered." See State v. Chatelain , 347 Or. 278, 283, 220 P.3d 41 (2009) (querying whether that is the test); id. at 288-89, 220 P.3d 41 (answering affirmatively); State v. Mayea , 170 Or. App. 144, 147, 11 P.3d 264 (2000) (when the charging instrument alleges that the defendant entered a dwelling with the intent to commit a specific crime, the evidence must permit the factfinder to conclude that the defendant entered with the intent to commit that crime; evidence that the defendant entered with other criminal objectives is insufficient). In this case, the state alleged that defendant committed burglary by unlawfully entering the victim's home with the intention to commit criminal mischief therein. Accordingly, the state had the burden to prove that defendant had that "particular mental state" when he entered. Chatelain , 347 Or. at 288, 220 P.3d 41 (emphasis in original). The state may rely on circumstantial evidence and reasonable inferences to establish a defendant's mental state. State v. Horton , 291 Or. App. 65, 70, 418 P.3d 31 (2018). However, only reasonable inferences are permissible; "speculation and guesswork are not." State v. McAtee , 245 Or. App. 233, 237, 261 P.3d 1284 (2011).
Certainly, the evidence in this case would support a finding that defendant was angry with the victim when *671 he entered her home. And a factfinder could reasonably infer that defendant had some kind of bad motivation when he entered. The difficulty for the state, however, is that no evidence allows an inference (as opposed to speculation) regarding the particular nature of that bad intent. For example, defendant could have wished to steal from the victim, he could have wished to taunt her simply by being present without her permission, he could have wished to remain in the house to alarm the victim when she returned home, or he could have wished to damage her property. To be sure, defendant did end up damaging the victim's property. But no evidence in this record supports an inference that he *392 already intended to do so when he entered the house. See State v. Cole , 290 Or. App. 553, 559, 415 P.3d 73 (2018) (no evidence that defendant already had formed the intent to steal electricity when he unlawfully entered the victim's home, even though he used electricity once inside); J. N. S. , 258 Or. App. at 320-21, 308 P.3d 1112 (it would be impermissibly speculative "to infer that, because youth possessed a key from inside the house, he had formed the intent to commit theft inside the house when he unlawfully entered"). No evidence indicates anything that could support an inference, as opposed to speculation, that defendant had already formed the specific intention to damage the victim's property by the time he got inside her house.[2] Even assuming that defendant caused the *672 damage to the victim's back door when he entered her home, that evidence is insufficient to support the burglary conviction because it does not prove that he intended to damage additional property once inside. Mayea , 170 Or. App. at 149, 11 P.3d 264. The trial court erred when it denied defendant's motion for judgment of acquittal on the burglary charge.
Although the record does not support defendant's burglary conviction, it does establish that he committed the lesser-included offense of first-degree criminal trespass by unlawfully entering a dwelling. ORS 164.255(1)(a). Accordingly, we reverse defendant's burglary conviction and remand for entry of a judgment of conviction for first-degree trespass. That disposition does not disturb defendant's conviction for second-degree criminal mischief.
Count 1 reversed and remanded with instructions to enter judgment of conviction for first-degree criminal trespass; remanded for resentencing; otherwise affirmed.

In its brief on appeal, the state argues that, even if it did not prove that defendant intended to commit criminal mischief when he entered the victim's home, evidence that defendant later formed that intent while remaining unlawfully in the home is sufficient to support his burglary conviction. In that regard, the state acknowledges our contrary holding in J. N. S. , but contends that that case was implicitly overruled by State v. Pipkin , 354 Or. 513, 316 P.3d 255 (2013). We recently rejected the same argument in McKnight , 293 Or. App. at 278-81, 426 P.3d 669.

Our cases provide some examples of the types of evidence from which a factfinder may reasonably infer what crime a defendant intended to commit inside a building when the defendant unlawfully entered or remained in that building. For example, we held in a case involving theft from a credit union that "the financial nature of the credit union's operations, the actions that defendant undertook to gain entry," and the defendant's attempts to evade being caught sufficiently established that the defendant had intended to commit theft when he attempted to enter the credit union. State v. Martin , 243 Or. App. 528, 533, 260 P.3d 197 (2011). In State v. Parker , 231 Or. App. 445, 449, 220 P.3d 110 (2009), rev. den. , 348 Or. 281, 230 P.3d 934 (2010), we held that the defendant's immediate attack on an occupant of a residence following an unlawful entry, combined with the defendant's comments suggesting an imminent physical encounter, were sufficient to support a finding that the defendant entered the dwelling with the intention to commit assault. We also have held that a defendant's previous unlawful acts may provide evidence that the defendant intends to continue committing such acts upon entering a building. State v. Pitts , 259 Or. App. 372, 378, 314 P.3d 324 (2013), rev. den. , 354 Or. 840, 326 P.3d 77 (2014). No analogous evidence is present here; nothing in the record about defendant's relationship with the victim, his past conduct, the way in which he gained entry to the victim's home, or the specific items he damaged once inside, would support an inference that he already intended to damage the victim's property when he entered her house unlawfully.