Justice KAVANAUGH delivered the opinion of the Court.
*1875 Section 924(e) of Title 18, also known as the Armed Career Criminal Act, mandates a minimum 15-year prison sentence for a felon who unlawfully possesses a firearm and has three prior convictions for a "serious drug offense" or "violent felony." Section 924(e) defines "violent felony" to include "burglary." Under this Court's 1990 decision in Taylor v. United States , 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607, the generic statutory term "burglary" means "unlawful or unprivileged entry into, or remaining in , a building or structure, with intent to commit a crime." Id ., at 599, 110 S.Ct. 2143 (emphasis added).
The exceedingly narrow question in this case concerns remaining-in burglary. The question is whether remaining-in burglary (i) occurs only if a person has the intent to commit a crime at the exact moment when he or she first unlawfully remains in a building or structure, or (ii) more broadly, occurs when a person forms the intent to commit a crime at any time while unlawfully remaining in a building or structure. For purposes of § 924(e), we conclude that remaining-in burglary occurs when the defendant forms the intent to commit a crime at any time while unlawfully remaining in a building or structure. We affirm the judgment of the U.S. Court of Appeals for the Sixth Circuit.
I
On August 24, 2013, police officers in Grand Rapids, Michigan, responded to a 911 call. When the officers arrived at the scene, the caller, Chasity Warren, told the officers that she had just escaped from her boyfriend, Jamar Quarles. Warren said that Quarles had threatened her at gunpoint and also hit her. While the police *1876 officers were speaking with Warren, Quarles drove by. The officers then arrested Quarles and later searched his house. Inside they found a semiautomatic pistol.
Quarles pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Quarles had at least three prior convictions that appeared to qualify as violent felonies under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Those three convictions were: (1) a 2002 Michigan conviction for third-degree home invasion stemming from an attempt to chase down an ex-girlfriend who had sought refuge in a nearby apartment; (2) a 2004 Michigan conviction for assault with a dangerous weapon based on an incident where Quarles held a gun to the head of another ex-girlfriend and threatened to kill her; and (3) a 2008 Michigan conviction for assault with a dangerous weapon arising from an altercation with another man and that same ex-girlfriend in which Quarles shot at the man.
In the sentencing proceedings for his federal felon-in-possession offense, Quarles argued that his 2002 Michigan conviction for third-degree home invasion did not qualify as a burglary under § 924(e). Under this Court's precedents, the District Court had to decide whether the Michigan statute under which Quarles was convicted in 2002 was broader than the generic definition of burglary set forth in Taylor (in which case the conviction would not qualify as a prior conviction under § 924(e) ) or, instead, whether the Michigan statute "substantially correspond[ed]" to or was narrower than the generic definition of burglary set forth in Taylor. 495 U.S. at 602, 110 S.Ct. 2143. To reiterate, Taylor interpreted burglary under § 924(e) to mean "unlawful or unprivileged entry into, or remaining in , a building or structure, with intent to commit a crime." Id ., at 599, 110 S.Ct. 2143 (emphasis added).
Under the Michigan law at issue here, a person commits third-degree home invasion if he or she "breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in , or exiting the dwelling, commits a misdemeanor." Mich. Comp. Laws Ann. § 750.110a(4)(a) (West 2004) (emphasis added). Quarles argued to the District Court that the Michigan third-degree home invasion statute swept too broadly to qualify as burglary under § 924(e) because the Michigan statute encompassed situations where the defendant forms the intent to commit a crime at any time while unlawfully remaining in a dwelling, not at the exact moment when the defendant is first unlawfully present in a dwelling. The District Court rejected that argument and sentenced Quarles to 17 years in prison. The Sixth Circuit affirmed. 850 F. 3d 836, 840 (2017). We granted certiorari in light of a Circuit split on the question of how to assess state remaining-in burglary statutes for purposes of § 924(e). 586 U.S. ----, 139 S.Ct. 914, 202 L.Ed.2d 640 (2019).
II
Section 924(e) lists "burglary" as a qualifying predicate offense for purposes of the Armed Career Criminal Act. But § 924(e) does not define "burglary." The question here is how to define "burglary" under § 924(e). We do not write on a clean slate. See Taylor , 495 U.S. at 599, 110 S.Ct. 2143.
At common law, burglary was confined to unlawful breaking and entering a dwelling at night with the intent to commit a felony. See, e.g. , 4 W. Blackstone, Commentaries on the Laws of England 224 (1769). But by the time Congress passed and President Reagan signed the current version of § 924(e) in 1986, state burglary statutes had long since departed *1877 from the common-law formulation. See Taylor , 495 U.S. at 593-596, 110 S.Ct. 2143. In addition to casting off relics like the requirement that there be a breaking, or that the unlawful entry occur at night, a majority of States by 1986 prohibited unlawfully "remaining in" a building or structure with intent to commit a crime. Those remaining-in statutes closed a loophole in some States' laws by extending burglary to cover situations where a person enters a structure lawfully but stays unlawfully-for example, by remaining in a store after closing time without permission to do so.
In the 1990 Taylor decision, this Court interpreted the term "burglary" in § 924(e) in accord with the more expansive understanding of burglary that had become common by 1986: "We believe that Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States." 495 U.S. at 598, 110 S.Ct. 2143. The Court concluded that generic burglary under § 924(e) means "unlawful or unprivileged entry into, or remaining in , a building or structure, with intent to commit a crime." Id. , at 599, 110 S.Ct. 2143 (emphasis added). A defendant's prior conviction under a state statute qualifies as a predicate burglary under § 924(e) if the state statute-regardless of its "exact definition or label"-"substantially corresponds" to or is narrower than the generic definition of burglary. Id., at 599, 602, 110 S.Ct. 2143.
In this case, we must determine the scope of generic remaining-in burglary under Taylor -in particular, the timing of the intent requirement. Quarles argues that remaining-in burglary occurs only when the defendant has the intent to commit a crime at the exact moment when he or she first unlawfully remains in a building or structure. The Government argues for a broader definition of remaining-in burglary. According to the Government, remaining-in burglary occurs when the defendant forms the intent to commit a crime at any time while unlawfully present in a building or structure. We agree with the Government.
As noted, Taylor interpreted generic burglary under § 924(e) to include remaining-in burglary. Id ., at 599, 110 S.Ct. 2143. In ordinary usage, "remaining in" refers to a continuous activity. See United States v. Cores , 356 U.S. 405, 408, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958) ; see also Webster's New International Dictionary 2106 (2d ed. 1949); 8 Oxford English Dictionary 418 (1933). This Court has followed that ordinary meaning in analogous legal contexts. For example, when interpreting a federal criminal statute punishing any " 'alien crewman who willfully remains in the United States in excess of the number of days allowed,' " the Court stated that "the crucial word 'remains' permits no connotation other than continuing presence." Cores , 356 U.S. at 408, 78 S.Ct. 875. The law of trespass likewise proscribes remaining on the land of another without permission. In that context, the term "remain" refers to "a continuing trespass for the entire time during which the actor wrongfully remains." Restatement (Second) of Torts § 158, Comment m, p. 280 (1965).
Those interpretations of "remaining in" in analogous areas of the law inform our interpretation of "remaining-in" burglary in § 924(e). In particular, the common understanding of "remaining in" as a continuous event means that burglary occurs for purposes of § 924(e) if the defendant forms the intent to commit a crime at any time during the continuous event of unlawfully remaining in a building or structure. To put it in conventional criminal law terms: Because the actus reus is a continuous event, the mens rea matches the actus reus so long as the burglar forms the intent to commit a crime at any time while *1878 unlawfully present in the building or structure.
Quarles insists, however, that to constitute a burglary under § 924(e), the intent to commit a crime must be contemporaneous with unlawful entry or remaining. That is true. But the defendant's intent is contemporaneous with the unlawful remaining so long as the defendant forms the intent at any time while unlawfully remaining. Put simply, for burglary predicated on unlawful entry , the defendant must have the intent to commit a crime at the time of entry. For burglary predicated on unlawful remaining , the defendant must have the intent to commit a crime at the time of remaining, which is any time during which the defendant unlawfully remains.
That conclusion is supported by the States' laws as of 1986 when Congress enacted § 924(e). As of 1986, a majority of States proscribed remaining-in burglary. At that time, there was not much case law addressing the precise timing of the intent requirement for remaining-in burglary. That is presumably because in most remaining-in burglaries, the defendant has the intent to commit a crime when he or she first unlawfully remains in a building or structure. The timing issue arises only in the rarer cases where the defendant forms the intent to commit a crime only after unlawfully remaining in the building or structure for a while. In any event, for present purposes, the important point is that all of the state appellate courts that had definitively addressed this issue as of 1986 had interpreted remaining-in burglary to occur when the defendant forms the intent to commit a crime at any time while unlawfully present in the building or structure. See Gratton v. State , 456 So. 2d 865, 872 (Ala. Crim. App. 1984) ; State v. Embree , 130 Ariz. 64, 66, 633 P. 2d 1057, 1059 (App. 1981) ; Keith v. State , 138 Ga. App. 239, 225 S. E. 2d 719, 720 (1976) ; State v. Mogenson , 10 Kan. App. 2d 470, 472-476, 701 P. 2d 1339, 1343-1345 (1985) ; State v. Papineau , 53 Ore. App. 33, 38, 630 P. 2d 904, 906-907 (1981).[1]
Especially in light of the body of state law as of 1986, it is not likely that Congress intended generic burglary under § 924(e) to include (i) a burglar who intends to commit a crime at the exact moment when he or she first unlawfully remains in a building or structure, but to exclude (ii) a burglar who forms the intent to commit a crime at any time while unlawfully remaining in a building or structure.
*1879 Indeed, excluding that latter category of burglaries from generic burglary under § 924(e) would make little sense in light of Congress' rationale for specifying burglary as a violent felony. As the Court recognized in Taylor , Congress "singled out burglary" because of its "inherent potential for harm to persons." 495 U.S. at 588, 110 S.Ct. 2143. Burglary is dangerous because it "creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." Ibid. ; see also United States v. Stitt , 586 U.S. ----, ----, 139 S.Ct. 399, 406, 202 L.Ed.2d 364 (2018).
With respect to remaining-in burglary, the possibility of a violent confrontation does not depend on the exact moment when the burglar forms the intent to commit a crime while unlawfully present in a building or structure. Once an intruder is both unlawfully present inside a building or structure and has the requisite intent to commit a crime, all of the reasons that led Congress to include burglary as a § 924(e) predicate fully apply. The dangers of remaining-in burglary are not tied to the esoteric question of precisely when the defendant forms the intent to commit a crime. That point underscores that Congress, when enacting § 924(e) in 1986, would not have understood the meaning of burglary to hinge on exactly when the defendant forms the intent to commit a crime while unlawfully present in a building or structure.
Moreover, to interpret remaining-in burglary narrowly, as Quarles advocates, would thwart the stated goals of the Armed Career Criminal Act. After all, most burglaries involve unlawful entry, not unlawful remaining in. Yet if we were to narrowly interpret the remaining-in category of generic burglary so as to require that the defendant have the intent to commit a crime at the exact moment he or she first unlawfully remains, then many States' burglary statutes would be broader than generic burglary. As a result, under our precedents, many States' burglary statutes would presumably be eliminated as predicate offenses under § 924(e). That result not only would defy common sense, but also would defeat Congress' stated objective of imposing enhanced punishment on armed career criminals who have three prior convictions for burglary or other violent felonies. We should not lightly conclude that Congress enacted a self-defeating statute. See, e.g ., Stokeling v. United States , 586 U.S. ----, ----, 139 S.Ct. 544, 552-553, 202 L.Ed.2d 512 (2019) ; Taylor , 495 U.S. at 594, 110 S.Ct. 2143.
To sum up: The Armed Career Criminal Act does not define the term "burglary." In Taylor , the Court explained that "Congress did not wish to specify an exact formulation that an offense must meet in order to count as 'burglary' for enhancement purposes." Id ., at 599, 110 S.Ct. 2143. And the Court recognized that the definitions of burglary "vary" among the States. Id ., at 598, 110 S.Ct. 2143. The Taylor Court therefore interpreted the generic term "burglary" in § 924(e) in light of: the ordinary understanding of burglary as of 1986; the States' laws at that time; Congress' recognition of the dangers of burglary; and Congress' stated objective of imposing increased punishment on armed career criminals who had committed prior burglaries. Looking at those sources, the Taylor Court interpreted generic burglary under § 924(e) to encompass remaining-in burglary. Looking at those same sources, we interpret remaining-in burglary under § 924(e) to occur when the defendant forms the intent to commit a crime at any time while unlawfully present in a building or structure.
*1880 III
In light of our conclusion that generic remaining-in burglary occurs when the defendant forms the intent to commit a crime at any time while unlawfully remaining in a building or structure, Quarles' case is easily resolved. The question in Quarles' case is whether the Michigan home-invasion statute under which he was convicted in 2002 is broader than generic burglary or, instead, "substantially corresponds" to or is narrower than generic burglary. Id ., at 602, 110 S.Ct. 2143. Regarding that inquiry, the Taylor Court cautioned courts against seizing on modest state-law deviations from the generic definition of burglary. A state law's "exact definition or label" does not control. Id. , at 599, 110 S.Ct. 2143. As the Court stated in Taylor , so long as the state law in question "substantially corresponds" to (or is narrower than) generic burglary, the conviction qualifies under § 924(e). Id., at 602, 110 S.Ct. 2143.
As stated above, generic remaining-in burglary occurs under § 924(e) when the defendant forms the intent to commit a crime at any time while unlawfully remaining in a building or structure. For the Court's purposes here, the Michigan statute substantially corresponds to or is narrower than generic burglary.[2]
* * *
We affirm the judgment of the U.S. Court of Appeals for the Sixth Circuit.
It is so ordered.

The consensus position has not changed. Today, of the States that have addressed the question, at least 18 have adopted the "at any time" interpretation of remaining-in burglary, and only 3 appear to have adopted the narrower interpretation.
Of those 18 States, some have adopted the broader "at any time" interpretation by statute. See Colo. Rev. Stat. § 18-4-201(3) (2018) ; Del. Code Ann., Tit. 11, § 829(e) (2015); Haw. Rev. Stat. Ann. § 708-812.5 (2014); Mich. Comp. Laws Ann. § 750.110a(4)(a) (West 2004); Minn. Stat. §§ 609.581(4), 609.582(3) (2016) ; Mont. Code Ann. § 45-6-204(1) (2017); Tenn. Code Ann. § 39-14-402(a)(3) (2018); Tex. Penal Code Ann. § 30.02(a)(3) (West 2019). And in addition to the five pre-1986 state-court decisions identified in the text above, at least five post-1986 state-court decisions have adopted the "at any time" interpretation of "remaining in." See Braddy v. State , 111 So. 3d 810, 844 (Fla. 2012) (per curiam ); State v. Walker , 600 N. W. 2d 606, 609 (Iowa 1999) ; State v. DeNoyer , 541 N. W. 2d 725, 732 (S. D. 1995) ; State v. Rudolph , 970 P. 2d 1221, 1228-1229 (Utah 1998) ; State v. Allen , 127 Wash. App. 125, 135, 110 P. 3d 849, 853-855 (2005).
By contrast, three state courts appear to have adopted the narrower interpretation. Shetters v. State , 751 P. 2d 31, 36, n. 2 (Alaska App. 1988) ; People v. Gaines , 74 N. Y. 2d 358, 361-363, 547 N.Y.S.2d 620, 546 N. E. 2d 913, 915-916 (1989) ; In re J. N. S. , 258 Ore. App. 310, 318-319, 308 P. 3d 1112, 1117-1118 (2013).

In his brief, Quarles alternatively suggests that Michigan's home-invasion statute actually does not require that the defendant have any intent to commit a crime at any time while unlawfully present in a dwelling. Brief for Petitioner 9. Quarles offers no support for his suggestion that there is no mens rea requirement. In any event, Quarles did not preserve that argument, and we do not address it.