Argued and submitted September 16; decision of Court of Appeals affirmed in part and reversed in part, judgment of circuit court affirmed December 27, 2019

STATE OF OREGON,
*Petitioner on Review,*

*v.*

DUSTIN LEE HENDERSON,
*Respondent on Review.*

(CC 15CR32629) (CA A163314) (SC S066367)

455 P3d 503

Defendant moved for a judgment of acquittal for first-degree burglary on the ground that the evidence could not support a finding that he intended to commit an additional crime in the victim's house at the time of his unlawful entry. The trial court denied the motion and a jury convicted defendant of first-degree burglary and second-degree criminal mischief. Defendant appealed the denial of his motion for judgment of acquittal and additionally argued that the trial court committed clear error by failing to *sua sponte* give a jury concurrence instruction on the criminal mischief charge. The Court of Appeals reversed, holding that the state was required to prove that defendant had the intent to commit an additional crime at the time that he entered the victim's house and that the evidence was insufficient to support a finding of such intent. The Court of Appeals declined to address defendant's jury concurrence instruction argument. *Held*: (1) It was not clear error for the trial court to fail *sua sponte* to give a jury concurrence instruction; (2) the intent to commit an additional crime required under the burglary statutes, ORS 164.215 and ORS 164.225, must exist at some point during the unlawful presence, but need not be present at the start of the trespass; and (3) the trial court correctly denied defendant's motion for judgment of acquittal on the burglary charge.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

En Banc

On review from the Court of Appeals.*

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* Appeal from Multnomah County Circuit Court, Thomas M. Ryan, Judge. 294 Or App 664, 432 P3d 338 (2018).

Stephanie Hortsch, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender.

BALMER, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.

**BALMER, J.**

The question before this court is whether a person commits the crime of first-degree burglary when the person enters a dwelling unlawfully without the intent to commit an additional crime and then develops that intent while unlawfully present in the dwelling. For the reasons set out below, we hold that forming the intent to commit an additional crime while unlawfully present after an initial unlawful entry constitutes first-degree burglary under ORS 164.225(1).

Defendant and the victim have two children together. Defendant and the victim were formerly in a relationship, but they broke up before the victim moved into the house where the unlawful entry took place. Although the victim previously had allowed defendant to visit their children at her house, defendant had never lived there, and the victim had made it clear to defendant that he was no longer welcome. On the day in question, defendant came to the house and told the victim that he wanted to shower and talk. She refused to let him inside and made sure to lock all the doors and windows before she left for work, fearing that defendant would try to come in while she was away. After the victim left, defendant broke into the house and destroyed a number of the victim's possessions, including a new television and several lamps. He intentionally cut his arm with a knife, bleeding on various pieces of her living room furniture. Defendant sent the victim text messages with pictures of his bleeding arm as well as messages blaming her for problems in his life. Based on those pictures, the victim realized defendant was in her house. The police were called and arrested defendant.

Defendant was eventually charged with, among other things, first-degree burglary constituting domestic violence and second-degree criminal mischief. At trial, after the state rested, defendant moved for a judgment of acquittal on the burglary charge, on the ground that the evidence could not support a finding that defendant intended to commit an additional crime in the victim's house at the time of his unlawful entry. The trial court denied the motion, and a jury found defendant guilty of both burglary and criminal mischief.

Defendant appealed, arguing that the trial court erred on two grounds: first, in denying his motion for judgment of acquittal on the burglary charge and, second, in failing to give a jury concurrence instruction on the criminal mischief charge, which, defendant argued, was necessary because the jurors may not have agreed which of the specific instances of criminal mischief defendant had committed. On the first issue, the Court of Appeals reversed defendant's burglary conviction, holding that the state was required to prove that defendant had the intent to commit an additional crime at the time that he entered the victim's house and that the evidence was insufficient to support a finding of such intent. *State v. Henderson*, 294 Or App 664, 432 P3d 338 (2018). The court remanded for entry of a judgment of conviction for the lesser-included offense of first-degree criminal trespass, ORS 164.255(1)(a). 294 Or App at 666. The Court of Appeals declined, however, to reach defendant's jury concurrence instruction argument because it was unpreserved. *Id.* The state petitioned for review of the burglary holding, and defendant filed a response seeking contingent review of the Court of Appeals' rejection of his jury concurrence argument, which challenged his criminal mischief conviction.

We allowed review of the state's petition to consider whether a person commits the crime of burglary when the person forms the required intent to commit a crime in addition to criminal trespass while the person is unlawfully present in the building, rather than before or at the time of the unlawful entry.

First, however, we dispose of defendant's jury concurrence argument. Defendant acknowledged that he did not preserve his jury concurrence instruction argument at trial. He argues, however, that Court of Appeals review was proper because the trial court committed plain error in failing to give such an instruction. As noted, the Court of Appeals rejected that argument without discussion. Defendant renews the plain error argument in this court.

In general, "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court." ORAP 5.45(1). However, an appellate court

"may, in its discretion, consider a plain error." *Id.* A claimed error is "plain" if (1) it is an error of law; (2) it is obvious, not reasonably in dispute; and (3) it appears on the face of the record. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006). We review the Court of Appeals' determination of whether or not an error is "plain" for legal error. *Id.* at 167.

Here, as noted, defendant argued that the trial court was required to give a jury concurrence instruction because the state presented three separate instances of criminal mischief—breaking the television, breaking the lamps, and bleeding on the furniture—but charged defendant with only one count of criminal mischief. Defendant argues that that error influenced the verdict because some jurors could have found one factual occurrence while rejecting others, and vice versa. The state's theory as argued at trial was that defendant damaged multiple pieces of property during one, single act of criminal mischief—not that defendant committed a distinct act of criminal mischief for every piece of property damaged. Defendant cites no case for the proposition that it was clear error for the trial court to fail *sua sponte* to give a jury concurrence instruction in such a scenario. Even assuming error, the error was not "plain."

We turn to the question of the intent required under the burglary statute. That statute provides that a person commits the crime of burglary "if the person *enters or remains unlawfully* in a building *with intent to commit a crime* therein." ORS 164.215(1) (emphasis added). The state asserts that the text of the statute, coupled with its legislative history, supports the state's position that a defendant need only develop the requisite intent to commit an additional crime at some point during the course of a criminal trespass.[1] Here, the state argues, even if defendant did not intend to commit an additional crime at the time that he unlawfully entered the house, he developed that intent while he unlawfully remained there, and that was sufficient to constitute burglary. In the state's view, burglary is

_____

[1] The state argues in the alternative that there was, in fact, sufficient evidence to demonstrate that defendant intended to commit criminal mischief inside the house at the time he entered unlawfully. Because we agree with the state on its primary argument that such a showing is not required, we do not reach the merits of its alternative argument.

committed (1) if the person has the intent to commit the additional crime at the time of the unlawful entry, *or* (2) if the person develops the intent while unlawfully present—that is, unlawfully "remaining"—after either entering unlawfully or after a lawful entry followed by the revocation of permission to be on the property. In other words, the state argues, the statute requires only that the unlawful presence on the property—the criminal trespass—be accompanied at some point by the intent to commit the additional crime.

Defendant claims that the statute requires that the intent to commit an additional crime exist at the beginning of the trespass. Thus, under defendant's interpretation, to commit burglary a person must intend to commit an additional crime either at the time of the unlawful entry *or* at the time of the unlawful remaining—that is, at the point when the person's initially lawful presence became unlawful. Defendant argues that "[a] person's continued presence in a building after unlawfully entering does not constitute 'remaining unlawfully' as prohibited by the burglary statutes." Thus, as applicable to this case, defendant contends that he did not "remain unlawfully" within the meaning of the statute and that his intent to commit criminal mischief was insufficient to support his burglary conviction.

To resolve this question of statutory interpretation, we first turn to the text of the statutes. *State v. Gaines*, 346 Or 160, 164, 206 P3d 1042 (2009). Oregon's modern burglary statutes were adopted as part of the 1971 overhaul of the Oregon Criminal Code.[2] Those statutes currently read as follows:

> "[A] person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

ORS 164.215(1).

> "A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling ***."

---

[2] Both of those statutes are unchanged from the versions passed in 1971, except that both now refer to a "person" rather than using male pronouns.

ORS 164.225(1). Read together, those statutes provide that a person commits first-degree burglary "if the person enters or remains unlawfully in a building with intent to commit a crime therein," ORS 164.215(1), and the building is a dwelling. ORS 164.225(1). Although we have decided a number of cases involving ORS 164.215(1), we have not addressed the precise question raised in this case: whether to be guilty of burglary a defendant must have the intent to commit an additional crime at the initiation of the trespass, or whether that intent may be developed during the course of an ongoing trespass.

Here, the Court of Appeals adhered to earlier decisions from that court holding that "there must be a temporal connection between the defendant's intent to commit a crime and the initiation of the defendant's trespass." *Henderson*, 294 Or App at 669 (quoting *State v. McKnight*, 293 Or App 274, 276, 426 P3d 669, *rev den*, 363 Or 817 (2018)); *see also Henderson*, 294 Or App at 669 ("Specifically, the requisite 'intent to commit a crime therein' must be present at the *start* of the defendant's unlawful trespass, whether that trespass consisted of an initial unlawful entry or an unlawful remaining after an initial lawful entry." (Internal quotes and citation omitted; emphasis in original.)). The Court of Appeals held that the state was required to show that defendant had the intent to commit an additional crime prior to entering the victim's house and that it had failed to do so. *Henderson*, 294 Or App 664.

The state argues that the text of the statute itself shows the Court of Appeals' interpretation to be incorrect. Burglary can be committed "if the person enters *or* remains unlawfully in a building *with* intent to commit a crime therein." ORS 164.215(1) (emphasis added). In the state's view, the statute plainly means that if the unlawful entry or remaining is "with"—that is, accompanied by—the intent to commit a crime, the requirements of the statute are met. The statute simply requires that the unlawful entry or remaining co-exist with the requisite intent; it does not require that the intent be present at the start of the unlawful entry or remaining. The state also points to the use of the word "or" in the statute and asserts that burglary can be proved by showing that the intent was present *either* at the time

of an unlawful entry *or* at the time of an unlawful remaining. Finally, the state argues that an unlawful "remaining" under ORS 164.215(1) almost always occurs after an unlawful entry (and continues until the person leaves the property or is given permission to remain), although an unlawful remaining also can occur after a lawful entry where permission to be on the property has been revoked.

Defendant counters that the statutory text is ambiguous as to whether the intent to commit a crime must exist at the initiation of the trespass. The burglary and criminal trespass statutes, he argues, were amended as part of the 1971 Criminal Code revision for the specific purpose of adding the "remains unlawfully" wording. That amendment, defendant contends, responded to circumstances where a person lawfully entered property, but failed to leave when permission to be on the property was revoked. He argues that the legislature intended to criminalize such "unlawful remaining" but did not intend to "broaden the definition of criminal trespass to eliminate the requirement that, to obtain a burglary conviction, the state must prove that the act constituting criminal trespass was accompanied by a contemporaneous intent to commit a crime." The state responds that the statute does not impose—and the legislature did not intend the statute to impose—such a strict temporal limitation on the formation of intent.

Before further evaluating the textual and other arguments of the parties, we digress briefly to discuss the evolution of the burglary statutes in Oregon prior to the 1971 revisions. The definition of burglary in the United States has been subject to much alteration by both legislatures and courts over the centuries. *See* Helen A. Anderson, *From the Thief in the Night to the Guest Who Stayed Too Long: The Evolution of Burglary in the Shadow of the Common Law*, 45 Ind L Rev 629, 629 (2012) (describing how "[b]urglary began evolving from the common law crime almost as soon as Lord Coke defined it in 1641"). Oregon's burglary statute also has evolved. Our state's original statutory definition of burglary was adopted in 1864 and read as follows:

"If any person shall break and enter any dwelling house in the night time, in which there is at the time some human

being, with intent to commit a crime therein; or having entered with such intent, shall break any such dwelling house in the night time, \*\*\* such person shall be deemed guilty of burglary \*\*\*."

General Laws of Oregon, Crim Code, ch XLIV, § 542, p 535 (Deady 1845-1864). This court interpreted that same statute in 1935—unchanged—to require that the state "prove beyond a reasonable doubt \*\*\* that, at the time of the breaking and entering, defendants had an intent to steal therein or commit some felony therein." *State v. Luckey*, 150 Or 566, 570, 46 P2d 1042 (1935).

    In the century following the publication of the Deady Code, the statute changed little. In 1953, it provided that:

"Any person who breaks and enters any dwelling house with intent to commit a crime therein, or having entered with such intent, breaks any dwelling house \*\*\* is guilty of burglary \*\*\*."

*Former* ORS 164.230 (1953). Like many other states, by this time Oregon's definition of the crime of burglary had begun to move further away from its common law predecessor. *See State v. Keys*, 244 Or 606, 615, 419 P2d 943 (1966) (noting such a movement). Absent by that time was the requirement that the breaking and entering take place at night or that "some human being" be physically present in the dwelling at the time of the breaking and entering. Oregon also had joined other states in expanding the scope of "breaking and entering" by establishing that "[e]very unlawful entry of a dwelling house with intent to commit a crime therein, is a breaking and entering of the dwelling house, within the meaning of ORS 164.230." *Former* ORS 164.220 (1953). *See also* Anderson, 45 Ind L Rev at 644 (noting that only "[t]welve jurisdictions retain breaking as an element, \*\*\* and in most, it has been judicially interpreted to mean little more than unlawful entry"). It was understood that that change "enlarge[d] the common-law understanding of the element of constructive breaking in the crime of burglary to include 'every unlawful' entry." *Keys*, 244 Or at 615. In sum, between 1864 and 1970, Oregon's burglary statute had changed in three respects: eliminating the elements of

night time entry, presence of a person, and actual breaking. Like the changes to the burglary statutes adopted in other states, those changes reflected a significant expansion from the common-law understanding of burglary.

The 1971 Legislative Assembly enacted a revised criminal code on the recommendations of the Criminal Law Revision Commission, further expanding the scope of burglary. That revision produced the statute—essentially unamended today—applicable in this case. As we have noted previously, "[c]arefully kept records of the proceedings of the Commission and of its subcommittees were preserved and, accordingly, provide a rich source for determination of the drafters' intent." *State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980). In general, this court "assume[s] in the absence of other legislative history that the Legislative Assembly accepted the commission's explanations." *State v. Woodley*, 306 Or 458, 462, 760 P2d 884 (1988). The commentary that accompanied the commission's ultimate recommendations also provides a source of legislative history and the intent of the drafters. *State v. Carpenter*, 365 Or 488, 497 n 4, 446 P3d 1273 (2019) ("When evaluating statutes developed by the Criminal Law Revision Commission, we look to both the commentary and the discussions that preceded the adoption of the final draft as legislative history for the resulting laws.").

The commission considered the burglary statutes on a number of occasions, but, over the course of that consideration, the parts of the statutes relevant to the question presented here changed very little. From the first proposed draft to the commission's final recommendation ultimately enacted by the 1971 legislature, the proposals established that burglary in the second degree occurred when a person "enter[ed] or remain[ed] unlawfully in a building with the intent to commit a crime therein." Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 136, 144 (July 1970). The definition of first-degree burglary was changed a few more times, but none of those changes were related to the interpretive issue that we deal with in this case.

Summarizing the burglary provisions of the revised criminal code, the commission's director stated that the

proposed statutes consistently "represent[ed] a significant departure from the traditional requirement of a breaking and entering" and established that no "preconceived intent to commit a crime would need to exist for burglary to lie." Tape Recording, Criminal Law Revision Commission Subcommittee No. 1, May 27, 1968, Tape 15, Side 2 (statement of Donald Paillette); Minutes, Criminal Law Revision Commission, May 27, 1968, 8. But, Paillette stated, the proposed statutes were not changing as much as it might appear because the "individual who would be prosecuted under this statute for burglary by remaining unlawfully is the one who has committed a crime in there." *Id.* Likewise, the drafters clarified that the sections as drafted meant that "[w]hether or not [a defendant] had intent to commit a crime when he entered the building is immaterial." Tape Recording, Criminal Law Revision Commission, July 19, 1968, Tape 9, Side 1 (statement of Donald Paillette); Minutes, Criminal Law Revision Commission, July 19, 1968, 7. That clarification is echoed throughout various other commission meetings as well as in commentary that the commission presented to the legislature: "Also eliminated is the requirement of proving that the intruder had the intent to commit the crime at the time of the entering." Commentary § 136 at 145.

With that background, we return to our consideration of the text, context, and legislative history of the current burglary statute, ORS 164.215(1). We readily conclude that the state has the better argument that the 1971 revision broadened the prior burglary statutes by eliminating the existing requirement of "unlawful entry of a dwelling house, *with* intent to commit a crime therein * * *." *Former* ORS 164.220 (1969) (defining "breaking and entering") (emphasis added); *see former* ORS 164.230 (1969) (using that definition of breaking and entering in defining "burglary"). As the state argues, the 1971 text, still in effect today, requires only that the person "enters *or remains* unlawfully in a building *with* intent to commit a crime therein." ORS 164.215(1) (emphasis added). As commission director Donald Paillette pointed out, under the revised text, it was "immaterial" whether the person had "intent to commit a crime when he entered the building." Tape Recording, Criminal Law Revision Commission, July 19, 1968, Tape 9, Side 1

(statement of Donald Paillette); Minutes, Criminal Law Revision Commission, July 19, 1968, 7. That textual conclusion is strongly supported by the clear statement in the commentary that the revision "eliminated * * * the requirement of proving that the intruder had the intent to commit the crime at the time of entering." Commentary § 136 at 145. And, as noted, Paillette had explained, during commission hearings, that the revision to the burglary statute would eliminate the need to prove a "preconceived intent to commit a crime" at the time of entry. Tape Recording, Criminal Law Revision Commission Subcommittee No. 1, May 27, 1968, Tape 15, Side 2 (statement of Donald Paillette); Minutes, Criminal Law Revision Commission, May 27, 1968, 8.

Defendant has another argument, however. He concedes that the 1971 legislature intended to dispense with the requirement that a defendant have an intent to commit another crime at the time of entry, but argues that the legislature relaxed that requirement only for cases in which the defendant entered lawfully but remained unlawfully. He then asserts that "remains unlawfully" and "enters unlawfully" are two "distinct, nonoverlapping ways by which a defendant can commit the trespass underlying the burglary charge." From that, he concludes that the state can prove burglary by showing a person's intent to commit an additional crime *either* (1) at the time of the unlawful entry or (2) *at the time* the person's presence became unlawful after an initial lawful entry. He nevertheless contends that the 1971 amendments did not extend the reach of the burglary statute so far as to apply to a person who enters a dwelling unlawfully and, while unlawfully present in the dwelling, develops the intent to commit an additional crime.

Defendant's argument is not well taken. In addition to the text of ORS 164.215(1), which defines the crime as including "remain[ing] unlawfully in a building with intent to commit a crime therein," and the legislative history discussed above, we directly addressed defendant's argument in *State v. Pipkin*, 354 Or 513, 316 P3d 255 (2013). There, we rejected the idea that "unlawfully entering" and "unlawfully remaining" are discrete statutory elements and held instead that they are "alternative and sometimes complementary ways of proving a defendant's unlawful presence in

a dwelling." *Id.* at 523. Moreover, we elaborated that when an unlawful entry occurs, that is not the end of the criminal trespass: "Almost every person who enters private property unlawfully will also remain there unlawfully." *Id.* at 522. We concluded that, "because unlawfully entering on private premises will almost always entail unlawfully remaining there as well, a person can commit burglary by entering unlawfully *or* remaining unlawfully or by entering *and* remaining unlawfully." *Id.* at 523 (emphasis added).

The discussion above demonstrates that a person trespasses by unlawfully entering and remaining on private premises, or by entering lawfully and then remaining unlawfully. The additional element that raises trespass to burglary—the intent to commit an additional crime "therein"—must exist at some point during the unlawful presence; in contrast to common-law burglary and to Oregon statutes before 1971, however, that intent need not be present at the start of the trespass.[3]

We return to the facts of this case. Defendant does not dispute that he was not licensed or privileged to be in the victim's house, nor does he claim that the evidence would not permit a jury to find that he developed the intent to commit the crime of criminal mischief while unlawfully present in the victim's house. Defendant's sole argument

---

[3] Most other courts have reached the same conclusion. The United States Supreme Court, for example, recently held that under the generic definition of burglary that it had articulated in previous cases, a "remaining-in burglary occurs when the defendant forms the intent to commit a crime *at any time* while unlawfully remaining in a building or structure." *Quarles v. United States*, ___ US ___, ___, 139 S Ct 1872, 1875, 204 L Ed 2d 200 (2019) (emphasis in original). The Court noted that burglary statutes have "long since departed from the common-law formulation," *id.* at ___, 139 S Ct at 1876-77, ultimately holding that

"for burglary predicated on unlawful entry, the defendant must have the intent to commit a crime at the time of entry. For burglary predicated on unlawful remaining, the defendant must have the intent to commit a crime at the time of remaining, which is *any time during which the defendant unlawfully remains.*"

*Id.* at ___, 139 S Ct at 1878 (emphasis added). The Supreme Court also noted that the consensus position among state appellate courts was that "remaining-in" burglary occurs "when the defendant forms the intent to commit a crime *at any time* while unlawfully present in the building or structure," *id.* at ___, 139 S Ct at 1878 (emphasis in original), and that of the courts addressing the issue, at least 18 had adopted the "at any time" interpretation, while only three—including the Oregon Court of Appeals—had adopted the narrower interpretation. *Id.* at ___, 139 S Ct at 1878 n 1.

is that the state was required to prove that he formed the intent to commit criminal mischief *prior* to entering the victim's house and that it failed to so prove. As the foregoing analysis makes clear, however, the proper inquiry is not whether defendant had the requisite intent at the onset of the trespass, but rather whether defendant developed an intent to commit an additional crime at any point during the course of the trespass. Because defendant committed criminal trespass by unlawfully entering and remaining in the victim's house and because defendant developed the intent to commit an additional crime—and did commit an additional crime—while unlawfully present in the house, the trial court correctly denied defendant's motion for judgment of acquittal on the burglary charge.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.