NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0156n.06

No. 24-5778

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) | |
| TONY F. WILKINSON, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: STRANCH, BUSH, and NALBANDIAN, Circuit Judges.

BUSH, J. (p. 7), delivered a separate concurring opinion in which NALBANDIAN, J., joined.

**PER CURIAM.** Tony Wilkinson pleaded guilty to a single count of possessing a firearm as an individual with a felony conviction, in violation of 18 U.S.C. § 922(g)(1). Wilkinson's past convictions include burglary, drug trafficking (twice), fleeing or evading police (twice), driving under the influence (three times), driving without a license (seven times), driving without insurance (four times), reckless driving, and criminal mischief. For the following reasons, we **AFFIRM** his conviction.

**I.**

On February 28, 2021, two Kentucky State Police troopers received complaints of an armed individual trafficking drugs and driving a pickup truck with the back window taped. The troopers saw a vehicle fitting that description and, after spotting an equipment violation (an unlit license plate), initiated a traffic stop. One of the troopers recognized the driver as Wilkinson based on previous interactions. As the troopers approached the truck, they saw Wilkinson move his right

hand behind his back before placing both of his hands on the steering wheel. The troopers asked Wilkinson to get out of the vehicle due to his nervous behavior and the information that he was armed. When Wilkinson stepped out, he admitted that he had tucked a handgun between his back and the driver's seat, which he claimed he had bought for his son. The gun was loaded. At the time, Wilkinson's criminal history included felony convictions for burglary and drug trafficking (twice), as well as a lengthy record of misdemeanors, including multiple convictions for driving under the influence and fleeing and evading law enforcement.

A grand jury in the Eastern District of Kentucky indicted Wilkinson on one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Wilkinson moved to dismiss the indictment based on the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), asserting that § 922(g)(1) was unconstitutional on its face and as applied to him. The district court denied the motion, and Wilkinson entered a guilty plea conditioned on his right to appeal the denial of that motion.

On August 23, 2024, nine days after Wilkinson was sentenced, we decided *United States v. Williams*. 113 F.4th 637, 657 (6th Cir. 2024). Wilkinson argues on appeal that § 922(g)(1) is unconstitutional as applied to him because he is not dangerous and that he is entitled to a post-*Williams* opportunity to prove as much on remand before the district court.

## II.

The Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home," subject to restrictions that are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 10, 17. In *United States v. Rahimi*, the Supreme Court clarified that a challenged gun regulation need not have an exact "historical twin" to satisfy this standard. 602 U.S. 680, 692 (2024). Applying *Bruen* and *Rahimi*, we held

in *Williams* that § 922(g)(1) "is constitutional on its face and as applied to dangerous people." 113 F.4th at 662–63. We explained that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous" provided that "each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous." *Id.* To prove that § 922(g)(1) is unconstitutional as applied to him, a defendant has the burden to show that he is not dangerous given his specific circumstances. *Id.* at 657. The dangerousness determination is "fact-specific," based on "a criminal defendant's entire criminal record—not just the predicate offense" that made him a felon, and must "tak[e] account of the unique circumstances of the individual, including details of his specific conviction[s]." *Id.* at 657–58, 663. We review an as-applied constitutional challenge to § 922(g)(1) de novo. *United States v. Gailes*, 118 F.4th 822, 824 (6th Cir. 2024).

Cases like this one, where the defendant was convicted of violating § 922(g)(1) after *Bruen* but prior to *Williams*, present an additional complication because the district court was not on notice that it should allow the defendant the "opportunity to make an individualized showing that he himself is not actually dangerous." *Williams*, 113 F.4th at 663. In such cases, we have asked whether "the record evidence would have indisputably led the district court to conclude that [the defendant] was dangerous enough to be constitutionally disarmed"; when the answer to this question is "yes," remand is unnecessary. *United States v. Henson*, No. 24-3494, 2025 WL 1009666, at *7 (6th Cir. Apr. 3, 2025); *see United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025). When a defendant's "dangerousness is self-evident, there is no need for a remand that would confirm what the record already reveals." *United States v. Robinson*, No. 24-1469, 2025 WL 2105111, at *2 (6th Cir. July 28, 2025) (citation modified).

To guide the inquiry, we counseled in *Williams* that certain classes of crimes are likely to be more or less probative of dangerousness. 113 F.4th at 658. "The first such group is crimes against the person," including "murder, rape, assault, and robbery," which will almost always show dangerousness under *Rahimi* because they are "violent act[s]" that "speak directly to whether an individual is dangerous." *Id.* The "second category of crimes, while not strictly crimes against the person, may nonetheless pose a significant threat of danger." *Id.* at 659. This category includes crimes like drug trafficking and burglary that "often lead[] to violence" or "create[] the possibility of a violent confrontation between the offender and the [victim]." *Id.* (first citing *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part and concurring in the judgment); and then quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)). The third group includes crimes that "cause no physical harm to another person or the community," including mail fraud and making false statements; "many of these crimes don't make a person dangerous." *Id.* Nonetheless, *Williams* emphasizes that we should not use a "categorical" approach to dangerousness akin to the test courts apply under the Armed Career Criminal Act. *Id.* at 660; *see generally Descamps v. United States*, 570 U.S. 254 (2013). Instead, we must look to the circumstances of each past conviction and determine holistically whether the defendant poses a danger to the community. *See Williams*, 113 F.4th at 660.

Wilkinson has three felony convictions. He was convicted of burglary in 2003, and on two occasions, in 2013 and again in 2016, Wilkinson sold oxycodone pills to a cooperating witness, resulting in separate drug trafficking convictions each time. We have suggested that both burglary and drug trafficking are highly probative of dangerousness because they are offenses that "while not strictly crimes against the person, may nonetheless pose a significant threat of danger" and "often lead[] to violence." *Williams*, 113 F.4th at 659. Wilkinson committed the most recent of

these offenses—the 2016 drug trafficking offense—less than five years prior to the date of the instant offense, February 28, 2021.

We note that Wilkinson's burglary conviction presents a few challenges for our review in this case. First, the record lacks information about the underlying circumstances of this offense—according to the presentence report, "[t]he details of this case are unknown," R. 48, PageID 189—which allows consideration of only the fact of Wilkinson's conviction, without any facts underlying the offense. In addition, not all state burglary offenses are created equal. "At common law, burglary was confined to unlawful breaking and entering a dwelling at night with the intent to commit a felony." *Quarles v. United States*, 587 U.S. 645, 649 (2019). Wilkinson was convicted of Kentucky third-degree burglary, which means only that he "knowingly enter[ed] or remain[ed] unlawfully in a building . . . with the intent to commit a crime." Ky. Rev. Stat. § 511.040. Under these circumstances, it is difficult to weigh the probative value of Wilkinson's burglary conviction.

The inquiry here, however, cannot end with Wilkinson's felonies—we must consider his "entire criminal record," *Williams*, 113 F.4th at 657, which contains many misdemeanors including several DUI convictions, reckless driving, several other driving offenses, criminal mischief, public intoxication, drug possession, and two convictions for fleeing and evading the police. All told, his criminal record includes an average of one criminal conviction a year since he turned eighteen. The repeated DUIs are particularly significant when combined with his drug- and alcohol-related offenses because, like the defendant whose conviction we affirmed in *United States v. Goins*, Wilkinson's "record reveals a dangerous pattern of misuse of alcohol and motor vehicles, often together." 118 F.4th 794, 804 (6th Cir. 2024). This case is distinguishable from *Goins* in that Wilkinson was not on probation at the time of his § 922(g)(1) offense, *see id.* at 804–05; but in

that case, DUI and drug possession were Goins's *most serious* offenses—his record did not include the burglary and drug trafficking offenses at issue here, *see id.* at 796; *Williams*, 659. Wilkinson's two misdemeanor convictions for fleeing and evading the police are also probative of dangerousness, as that is an offense that can "lead[] to violence," *Williams*, 113 F.4th at 659, and the record indicates that he was intoxicated during both offenses.

When considered in the aggregate, this lengthy criminal record of felony and misdemeanor offenses demonstrates that Wilkinson "was dangerous enough to be constitutionally disarmed" under § 922(g)(1). *Henson*, 2025 WL 1009666, at *7. We see no indication that the district court would come to a different conclusion on remand, especially given that Wilkinson makes no effort in his briefing to "tell us what 'evidence' he would have presented on the dangerousness question." *United States v. Poe*, No. 24-6014, 2025 WL 1342340, at *2 (6th Cir. May 8, 2025).

**III.**

For these reasons, we **AFFIRM**.

**JOHN K. BUSH, concurring.** I agree with the per curiam disposition of this case. I write separately because I believe that the offense conduct also supports disarming Wilkinson.

Wilkinson was caught in possession of a loaded firearm while driving under the influence of an illegal drug to such an extent that he struggled to stand upon exiting his vehicle. More alarming, as the troopers approached his truck, Wilkinson was manipulating the gun while trying to hide it behind his back. Wilkinson's decision to drive while high on methamphetamine and handle a loaded firearm support a finding that he is a dangerous felon. Founding-era examples indicate that the Second Amendment allows for disarmament of a person while under the influence of an intoxicant. *See United States v. Goins*, 118 F.4th 794, 806 (6th Cir. 2024) (Bush, J., concurring in part and in the judgment).

Also, we held that § 922(g)(3), which disarms users of illegal drugs, was constitutional as applied to a defendant who had been "shooting a rifle in the direction of a propane tank in a residential neighborhood while drunk and high." *United States v. VanOchten*, 150 F.4th 552, 560 (6th Cir. 2025) (quotation marks omitted). That precedent is instructive here. Although there is no evidence that Wilkinson fired his weapon, it is undisputed that he possessed the gun while under the influence of methamphetamine, and there was a real risk that he could have mishandled that firearm, resulting in death or injury, given that he reached for the gun as officers approached his car.