HADLOCK, P. J.
*596 Respondent Venture Properties applied for approval of a six-lot subdivision on land located in Washington County. A county hearings officer approved the application and petitioner Warren appealed that opinion to the Land Use Board of Appeals (LUBA). LUBA rejected each of petitioner's challenges to the order and petitioner now seeks judicial review. Neither Venture Properties nor respondent Washington County has filed a brief in this court. For the reasons set out below, we affirm.
The pertinent facts are set out in LUBA's order. Venture Properties applied for approval of a six-lot subdivision on a 2.8-acre parcel of land. A stream called Ash Creek runs through the parcel and approximately half of the parcel is included on a map of Significant Natural Resources (SNR) that is part of the county's program for meeting Statewide Planning Goal 5.[1] The subdivision *582 application proposed setting aside 58 percent of the property from development, including "the Ash Creek floodplain and associated wetlands and vegetated corridors." The application proposed "enhancement plantings" in a corridor adjacent to Ash Creek as required by regulations of Clean Water Services (CWS), the regional sewerage agency in that area. A county hearings officer approved the application with conditions, and LUBA affirmed the county's decision.
Petitioner's challenges to the LUBA order all relate to whether Washington County could apply certain provisions of its community development code (CDC) to prevent or restrict the proposed subdivision. To provide context for petitioner's arguments and LUBA's rationale for rejecting them, we set out the pertinent statutory provisions-in particular, ORS 197.307(4) -before discussing petitioner's arguments in detail. However, we note at the outset that at least some of petitioner's arguments are premised on an assumption that part of the 2.8-acre property at issue may not qualify as *597 "buildable land" as that term is defined in ORS 197.295(1). That is a fact that LUBA also appears to have assumed for purposes of resolving petitioner's challenges to the subdivision approval and, accordingly, we do so, too.[2]
The extent to which the county's CDC provisions could apply to the subdivision application is controlled in part by ORS 197.307, which is sometimes referred to as one of Oregon's "needed housing statutes." See, e.g. , Warren v. Washington County , --- Or. LUBA ----, ---- (LUBA No. 2018-089, Nov. 14, 2018) (slip op. at 6) ("The statutes that are set out at ORS 197.295 to 197.314 are commonly referred to as the Needed Housing Statutes."). The statute addresses, as "a matter of statewide concern," the "availability of affordable, decent, safe and sanitary housing opportunities for persons of lower, middle and fixed income, including housing for farmworkers." In various ways, the provisions of ORS 197.307 govern the circumstances under which local governments may apply standards, conditions, and procedures that have the effect of regulating or restricting the development of housing. The legislature amended several of the needed housing statutes in 2017. See Or. Laws 2017, ch. 745.
Petitioner's arguments focus on the requirements of ORS 197.307(4). Before it was amended in 2017, ORS 197.307(4) provided that local governments generally could restrict development of "needed housing" on "buildable land" only through application of regulations and procedures that were "clear and objective":
"Except as provided in subsection (6) of this section, a local government may adopt and apply only clear and objective standards, conditions and procedures regulating the *598 development of needed housing on buildable land described in subsection (3) of this section. The standards, conditions and procedures may not have the effect, either in themselves or cumulatively, of discouraging needed housing through unreasonable cost or delay."
ORS 197.307(4) (2015). By its terms, the "clear and objective" standard imposed by ORS 197.307(4) then applied only to development of needed housing on buildable land. The statute did not prevent local governments from applying standards, conditions, and procedures that were not clear and objective *583 to regulate housing development on other types of land.[3]
As amended in 2017, ORS 197.307(4) now provides:
"Except as provided in subsection (6) of this section, a local government may adopt and apply only clear and objective standards, conditions and procedures regulating the development of housing, including needed housing. The standards, conditions and procedures:
"(a) May include, but are not limited to, one or more provisions regulating the density or height of a development.
"(b) May not have the effect, either in themselves or cumulatively, of discouraging needed housing through unreasonable cost or delay."
Thus, ORS 197.307(4) no longer refers to "buildable land," and, by its terms, provides that local government can regulate the development of housing only through clear and objective standards, conditions, and procedures.
That 2017 version of ORS 197.307(4) applies to Venture Properties' subdivision application. In rejecting petitioner's arguments that certain CDC provisions should prevent the subdivision from going forward, LUBA ruled, as pertinent here: (1) ORS 197.307(4) prohibits Washington County "from applying any standards, conditions and procedures that are not clear and objective to [Venture Properties'] application to develop a six-lot residential subdivision, *599 without regard to whether [Venture Properties'] property is 'buildable land' "; (2) aspects of CDC 422-3.3, which generally prohibits new or expanded alteration of vegetation in a riparian corridor, except in specified circumstances, and CDC 422-3.4, which relates to enhancements of degraded riparian corridors, are not "clear and objective"; and (3) substantial evidence supports the county hearing officer's determination that a part of the property near Ash Creek is "degraded" for purposes of those CDC provisions. On judicial review, petitioner challenges each of those aspects of LUBA's decision.
We begin our analysis by addressing petitioner's overarching challenge to the LUBA decision, which is premised on petitioner's contention that the 2017 amendments to ORS 197.307(4) did not have the effect of extending the "clear and objective" requirement to housing development on land that is not buildable land. Rather, according to petitioner, the "clear and objective" requirement in ORS 197.307(4)"still only appl[ies] to 'buildable land.' "
To assess petitioner's statutory construction argument, we examine the text and context of ORS 197.307(4) as amended in 2017 and, to the extent it appears useful, the legislative history. TriMet v. Amalgamated Transit Union Local 757 , 362 Or. 484, 493, 412 P.3d 162 (2018). We begin with the statute's text, which "is the most persuasive evidence of the legislature's intent." Id. Again, the pertinent part of the amended statute provides:
"Except as provided in subsection (6) of this section, a local government may adopt and apply only clear and objective standards, conditions and procedures regulating the development of housing, including needed housing. * * *"
ORS 197.307(4).
Nothing in the wording of that provision suggests that the requirement that local governments regulate housing development only through "clear and objective" standards applies only to housing development on "buildable land." To the contrary, ORS 197.307(4) plainly states that the "clear and objective" requirement applies broadly to local governments' application of standards, conditions, and procedures "regulating the development of housing" generally, *600 including "needed housing." Reading that provision to apply only to housing that is developed on buildable land would impermissibly insert a limitation on the provision's scope, in violation of ORS 174.010 (in construing a statute, a court *584 should "ascertain and declare what is * * * contained therein" and should not "insert what has been omitted").
Consideration of context, including the previous version of ORS 197.307(4), does not change our view of the provision's meaning. See State v. Spainhower , 251 Or. App. 25, 28, 283 P.3d 361 (2012) (context "includes prior versions of the statute"). The 2017 legislature expressly deleted the reference to "buildable land" from ORS 197.307(4), supporting our view that subsection (4) no longer relates only to development that occurs on that category of land. Or. Laws 2017, ch. 745, § 5. Moreover, other aspects of the 2017 legislation also reflect an intention to promote certain housing development. For example, the legislation includes provisions that, under specified circumstances, impose relatively short timelines for processing applications for development of affordable multifamily housing, prohibit counties from reducing the density associated with certain proposed housing developments, redefine "needed housing" to expressly address "affordab[ility] to households within the county with a variety of incomes," require certain municipalities to allow accessory dwelling units, and permit places of worship to use their real property to provide affordable housing. Or. Laws 2017, ch. 745, §§ 1, 2, 3, 4, 6, 7, 8. Each of those provisions may be viewed as promoting housing development-a goal that is consistent with making the "clear and objective" standard in ORS 197.307(4) applicable to housing development generally, not only to development of housing on "buildable land."
Nonetheless, in arguing that context supports her interpretation of ORS 197.307(4), petitioner points to other statutory provisions that retain references to "buildable land," particularly ORS 197.307(3), which states (as it did before the 2017 legislation):
"When a need has been shown for housing within an urban growth boundary at particular price ranges and rent levels, needed housing shall be permitted in one or more zoning districts or in zones described by some *601 comprehensive plans as overlay zones with sufficient buildable land to satisfy that need."
Petitioner posits that, because subsection (3) of ORS 197.307 already references "buildable land," the legislature likely deleted that reference from subsection (4) simply "to avoid repetitious language." We disagree. As LUBA explained, ORS 197.307(3) relates to "estimating housing demand and land supply" and it "imposes a planning mandate on local governments" requiring them to allow needed housing in the particular areas identified in that subsection of the statute. ORS 197.307(4) addresses a different concern, limiting the standards that local governments may apply when considering an application to develop housing. For at least that reason, the reference to "buildable land" in subsection (3) does not suggest that the legislature silently intended subsection (4) to apply only to applications for housing on buildable land.
Petitioner's additional statutory construction arguments rely on the wording of an administrative rule that apparently has not yet been updated to reflect the 2017 amendment to ORS 197.307(4), the absence of a discussion of the previous "buildable land" limitation in the legislative history of that amendment, and petitioner's view that interpreting the provision according to its plain terms would lead to an absurd result. We have considered each of those arguments and conclude that they lack merit. We conclude, as did LUBA, that the "clear and objective" requirement in ORS 197.307(4) applies, as it states, to "standards, conditions and procedures regulating the development of housing, including needed housing," without regard to whether the development will occur on "buildable land."
We turn to petitioner's other challenges to the LUBA order, which focus on LUBA's determination that pertinent aspects of CDC 422-3.3 and CDC 422-3.4 are not "clear and objective" and that, consequently, the county could not apply those code provisions to the proposed development. CDC 422 includes the county standards that are designed "to permit limited and safe development in areas with significant natural resources, while providing for the identification, protection, enhancement and perpetuation" of those resources. CDC 422-1. CDC 422-3.3 sets out the standards *602 for development in a riparian *585 corridor. As pertinent here, that CDC provision states:
"A. No new or expanded alteration of the vegetation or terrain of the Riparian Corridor * * * shall be allowed except for the following:
"* * * * *
"(7) Where it can be demonstrated, with concurrence of the Clackamas County biologist or other applicable district biologist of the Oregon Department of Fish and Wildlife, that a riparian corridor * * * has been degraded, an enhancement of [that] area which conforms to the definition and criteria listed in Section 422-3.4 may be permitted * * *. Enhancement or alteration of a non-degraded portion of these areas is permitted when it is in conjunction with and it is needed to support the enhancement of the degraded area. * * *"
CDC 422-3.3. In turn, CDC 422-3.4 provides that "[e]nhancement of a degraded riparian corridor" that is permitted under CDC 422-3.3 A. (7) "shall meet the following" requirements, including:
"A. For the purposes of Section 422-3.3 A. (7) an enhancement is a modification, as a result of which no later than five (5) years after completion of the project, the quality and/or quantity of the natural habitats is measurably improved in terms of animal and plant species numbers, number of habitat types, and/or amount of area devoted to natural habitat."
CDC 422-3.4 (emphasis added).
As noted, LUBA determined that CDC 422-3.3 and CDC 422-3.4 could not be applied to prevent the enhancement plantings along Ash Creek because the term "measurably improved" is not "clear and objective," as ORS 197.307(4) requires. On judicial review, petitioner does not challenge that determination directly; that is, petitioner does not assert that the term "measurably improved" is clear and objective.[4] Rather, petitioner argues that LUBA should not have applied the "clear and objective" test at all, because the term "enhancement" is merely a definition, and not a "standard[ ], *603 condition[ ] [or] procedure[ ]" for purposes of ORS 197.307(4). We disagree. Application of CDC 422-3.3 and CDC 422-3.4 to either allow or disallow alteration of a riparian corridor through enhancement plantings in conjunction with a proposed subdivision amounts to "regulat[ion of] the development of housing, including needed housing." Further, whether such enhancement is permissible under those CDC provisions depends in part on whether the natural habitat will be "measurably improved" as a result. CDC 422-3.4. Thus, measurable improvement of natural habitat is a "condition" to allowing enhancement of a degraded riparian corridor.
Petitioner also argues on judicial review that LUBA should not have reached the question whether the term "measurably improved" is clear and objective because the general prohibition against "new or expanded alteration of the vegetation or terrain of the Riparian Corridor" in CDC 422-3.4 itself is clear and objective. Because that general prohibition is clear and objective, petitioner argues, it does not matter whether any of the exceptions to the prohibition-including the enhancement exception-also meets that requirement. Petitioner relies on the presence of a severability clause in the CDC and contends that application of that clause means that, "even if the definition of 'enhancement' in the list of exceptions is found to be unenforceable, then the otherwise clear and objective general prohibition against 'new or expanded alteration of vegetation' in the riparian SNR would still be enforceable."[5] That is not an argument that petitioner meaningfully developed before LUBA and it is, therefore, not properly preserved for our review. See Willamette Oaks, LLC v. City of Eugene , 295 Or. App. 757, 765-66, 437 P.3d 314 (2019) (discussing preservation *586 principles as they apply in judicial review of LUBA proceedings).
We reject petitioner's remaining arguments on judicial review without discussion.
Affirmed.

As noted in OAR 660-015-0000(5), Statewide Planning Goal 5 relates to "Natural Resources, Scenic and Historic Areas, and Open Spaces." The administrative rules in OAR chapter 660, division 23, "establish[ ] procedures and criteria for inventorying and evaluating Goal 5 resources and for developing land use programs to conserve and protect significant Goal 5 resources." OAR 660-023-0000.

ORS 197.295(1) defines "buildable lands" as "lands in urban and urbanizable areas that are suitable, available and necessary for residential uses." The term includes "both vacant land and developed land likely to be redeveloped." Id.
LUBA found that the property at issue in this case is included in Metro's Buildable Lands Inventory (BLI). Petitioner does not contest that finding. LUBA also ruled that inclusion of the property in the BLI means that Metro has determined that at least some portion of the property is "buildable land" as defined in ORS 197.295(1). Petitioner does not contest that ruling. However, LUBA has not determined that the entire property is "buildable land." Rather, it held that petitioner's arguments lacked merit "without regard to whether [the] property is 'buildable land.' "

Laws other than ORS 197.307(4) may or may not have then restricted local governments' ability to apply standards or regulations that were not "clear and objective" to lands other than buildable lands. This opinion concerns only the "clear and objective" requirement imposed by ORS 197.307(4), before and after the 2017 legislation at issue, and this opinion should not be read to express any view on the effect of other statutes on the development of housing in this state.

Accordingly, we express no view on whether the term "measurably improved" meets the "clear and objective" standard.

The clause on which petitioner relies is CDC 105-1, which states:
"If any portion of this Code is for any reason held invalid or unconstitutional by a court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision and such holding shall not affect the validity of the remaining portions of this Code."