Argued and submitted March 28; convictions on Counts 1, 2, 4, and 6 reversed, remanded for resentencing, otherwise affirmed May 25, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AARON PAUL BOSTWICK, SR.,
*Defendant-Appellant.*

Linn County Circuit Court
19CR28161; A173880

512 P3d 855

Defendant appeals a judgment of conviction for three counts of attempted aggravated first-degree theft by deception (Counts 1, 3, and 5), ORS 164.085, and three counts of simulating legal process (Counts 2, 4, and 6), ORS 162.355. In his combined first, second, and third assignments of error, defendant argues that the trial court erred by denying his motion for judgment of acquittal (MJOA) on all three counts of simulating legal process, because none of the documents in question falsely simulated any civil or criminal process within the meaning of ORS 162.355. In his combined fourth, fifth, and sixth assignments of error, defendant argues that the trial court erred by denying his MJOA on all three counts of attempted aggravated first-degree theft, because defendant's conduct did not constitute a substantial step toward committing that offense. *Held*: Regarding the charges for simulating legal process, the trial court erred when it denied defendant's MJOA as to those charges, because the record shows that the documents in question were not fake, imitation, counterfeit, or pretend documents that falsely appear to be, in both form and substance, genuine legal documents. Regarding the charges for attempted aggravated first-degree theft by deception, the trial court did not err in denying defendant's MJOA as to Counts 3 and 5; however, the trial court erred in denying defendant's MJOA as to Count 1, because the evidence was legally insufficient to show that defendant's conduct underlying Count 1 constituted a substantial step toward the commission of the charged offense.

Convictions on Counts 1, 2, 4, and 6 reversed; remanded for resentencing; otherwise affirmed.

David E. Delsman, Judge.

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and James, Judge.

TOOKEY, P. J.

Convictions on Counts 1, 2, 4, and 6 reversed; remanded for resentencing; otherwise affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for three counts of attempted aggravated first-degree theft by deception (Counts 1, 3, and 5), ORS 161.405; ORS 164.057; ORS 164.085, and three counts of simulating legal process (Counts 2, 4, and 6), ORS 162.355. In his combined first, second, and third assignments of error, defendant argues that the trial court erred by denying his motion for judgment of acquittal (MJOA) on all three counts of simulating legal process, because none of the documents in question falsely simulated any civil or criminal process within the meaning of ORS 162.355. In his combined fourth, fifth, and sixth assignments of error, defendant argues that the trial court erred by denying his MJOA on all three counts of attempted aggravated first-degree theft, because defendant's conduct did not constitute a substantial step toward aggravated first-degree theft by deception.

For the reasons explained below, we reverse defendant's convictions for simulating legal process in Counts 2, 4, and 6; reverse the conviction for attempted aggravated first-degree theft in Count 1; affirm the convictions for attempted aggravated first-degree theft in Counts 3 and 5; and remand for resentencing.[1]

"We review the denial of a motion for a judgment of acquittal by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Fuller*, 303 Or App 47, 48, 463 P3d 605 (2020) (brackets and internal quotation marks omitted). In accordance with that standard, we state the following facts.

---

[1] Defendant also assigns error to the trial court's imposition of a departure sentence on Count 1. Because we reverse defendant's conviction as to Count 1 and remand for resentencing, we do not reach that issue. Defendant is entitled to present argument about that matter at his resentencing proceeding. *See State v. Zolotoff*, 275 Or App 384, 393-95, 365 P3d 131 (2015) ("[W]here an appellate court reverses one conviction of a multiple-conviction judgment, all of a defendant's convictions must be remanded for resentencing," and "the defendant is entitled to present evidence and argument pertaining to the resentencing proceeding." (Internal quotation marks omitted.)).

## I.  FACTS

On three consecutive days in September 2015, defendant visited the car-audio store owned by the victim, J. On each occasion, defendant paid for various pieces of car-audio equipment with fraudulent checks. J remembered defendant from prior transactions, and he knew that defendant liked to save money by installing equipment himself. Accordingly, defendant did not pay for any labor or installation of that equipment.

In 2016, J filed a small-claims suit and was awarded $727.13 for the audio equipment defendant had obtained with the fraudulent checks. During the pendency of that small-claims suit, defendant was incarcerated. Defendant twice wrote to J, stating that he "ha[d] the funds now in my inmate trust account to cover the checks," and requesting J's bank account information—ostensibly for the purpose of repaying J for the audio equipment. J provided defendant with his bank's name and address, but he declined to provide his account number because he thought defendant would use it for "some sort of fraud or scheme for theft."

In 2017, while still incarcerated, defendant filed the first of three virtually identical small-claims suits against J. Defendant had experience with the small-claims process: Before suing J, he had filed more than 40 small-claims suits against various individuals, entities, and government officials and institutions. Because it is relevant to our analysis, we note in particular that, not long before his suit against J, defendant filed a small-claims suit against Fred Meyer, alleging that he was owed $10,000 for an injury to his thumb. Rather than serving the proper documents to Fred Meyer, defendant instead mailed to Fred Meyer only a court schedule from the Skagit County Circuit Court in Washington. Consequently, Fred Meyer had no notice of that action and failed to appear, so defendant was able to obtain a judgment against Fred Meyer for the $10,000. Fred Meyer only later became aware of defendant's judgment when its bank notified it that defendant was attempting to garnish $10,000 from its accounts.

Defendant's first small-claims suit against J alleged that J owed him $10,000 because the audio equipment he

obtained from J with fraudulent checks had "caused a complete short out in my [vehicle's] wiring system." The court later notified defendant by letter that he needed to submit a new proof of service, because his original proof of service was deficient in that it indicated that he had served J some two weeks *before* the court had even given defendant certain documents required for proper service. Defendant then moved for, and was granted, dismissal of that first suit without prejudice, because he planned to garnish J's bank account, but that required him to "pay a $35 fee for a garnishment," and he "didn't have the money to go forward" with garnishment at that time.

About three weeks later, defendant filed his second small-claims suit against J. He alleged that J owed him $10,000 for "[i]nstalling [a] defective stereo system in [his vehicle] and shorting out [his] entire electrical system." Defendant certified to the court that he had mailed a copy of the summons and notice of small claim to J; however, that mailing did not contain any such summons or notice. Instead, that mailing contained only a copy of the district attorney's information from the criminal case in which defendant was charged with first-degree theft and identity theft in relation to his use of fraudulent checks at J's store in 2015. When J received that information, he did not understand why he was receiving it, but he assumed it had to do with his participation in a crime-victim's notification network, so he "didn't pay much mind to it at that point in time." Consequently, J made no appearance in the small-claims case, and defendant was able to obtain a default judgment against J for $10,000 plus fees.

Just one day after obtaining that judgment, defendant filed a third small-claims suit against J. In that third claim, defendant again alleged that J owed him $10,000 for "[i]nstalling [a] defective stereo system in my [vehicle], shorting out my entire electrical system." Again, defendant certified to the court that he had mailed a copy of the summons and notice of small claim, and, again, that mailing contained no summons or notice to J; rather—similar to his second small-claims suit against J—defendant sent J only a copy of the judgment and conviction in the criminal case

relating to his use of fraudulent checks at J's business in 2015. As a result, J was again unaware he needed to appear in court, and defendant was able to obtain a second judgment against J for $10,000 plus fees.

In February 2018—shortly after defendant obtained the second $10,000 judgment against J—an attorney at the Oregon Department of Corrections notified the Oregon State Police (OSP) Major Crimes Division that defendant might be involved in a plan inside the prison to defraud "somebody on the outside" by filing small-claims suits without notifying the opposing parties. During the ensuing investigation, an OSP detective discovered defendant's two small-claims judgments against J. The detective contacted J about those judgments, and J was "flabbergasted" to learn of defendant's "bogus and preposterous" claims against him. J subsequently discovered that the judgments showed up on a title report for his real estate holdings, affected his credit score, and increased his insurance costs.

In July 2018, an OSP detective contacted defendant in prison and inquired about the basis for the claims against J and why defendant had continued to file redundant claims, even after obtaining a judgment against J. Defendant explained that he filed multiple claims because he "didn't know how to sue [J]"—*i.e.*, "if he was supposed to sue the business or if he was supposed to sue the person." Defendant also stated that, in addition to mailing the appropriate notice documents to J, he had included the district attorney's information and conviction records because, as he explained it, "he was trying to relate them back." The detective also asked defendant about the "many, many small claims" he had previously filed—including one against a McDonald's—and defendant responded that he "knows [what] the processes are, and if someone's claiming they didn't receive the right documents, th[en] they were lying." Defendant "couldn't really answer why he filed [again] after he received a judgment," and his other answers "did not make a lot of sense" to the OSP detective. After the detective contacted defendant in prison, defendant wrote a letter to the court asking that it dismiss without prejudice the judgments in his second and third small-claims suits.

In total, defendant was able to obtain judgments against J in excess of $20,000, though he agreed that the actual cost of repairing his vehicle's audio system was somewhere between $600 and $1,500. Defendant explained that he had filed the small claims for $10,000 each, because "that's the most you can sue for."[2]

## II.   PROCEDURAL BACKGROUND

For his conduct relating to the three small-claims suits he filed against J, the state charged defendant with three counts of simulating legal process, ORS 162.355, and three counts of attempted first-degree theft, ORS 161.405; ORS 164.057.

Regarding the three counts of simulating legal process under ORS 162.355,[3] the state's theory was that defendant had committed those offenses by three times filing unmeritorious small-claims suits and mailing irrelevant legal documents to J instead of proper notices of those suits. Likewise, regarding the three counts of attempted first-degree theft, the state proceeded on a theory of theft by deception under ORS 164.085(a) and (d),[4] alleging that defendant had committed those offenses by three times attempting to fraudulently obtain $10,000 from J by filing three successive unmeritorious small-claims suits and failing to provide proper notice of those suits in order to obtain default judgments against J.

---

[2] Eventually, with the assistance of counsel, J was able to vacate the judgments in both the second and third small-claims suits.

[3] ORS 162.355(1) provides, "A person commits the crime of simulating legal process if, with the intent to harass, injure or defraud another person, the person knowingly issues or delivers to another person any document that in form and substance falsely simulates civil or criminal process."

[4] ORS 164.085 provides, in part:

"(1) A person, who obtains property of another thereby, commits theft by deception when, with intent to defraud, the person:

"(a) Creates or confirms another's false impression of law, value, intention or other state of mind that the actor does not believe to be true; [or]

"*****

"(d) Sells or otherwise transfers or encumbers property, failing to disclose a lien, adverse claim or other legal impediment to the enjoyment of the property, whether such impediment is or is not valid, or is or is not a matter of official record[.]"

At defendant's bench trial, he moved for judgment of acquittal on all counts. Regarding the three counts of simulating legal process, defendant argued that ORS 162.355 was not intended to criminalize defendant's alleged conduct. More specifically, he argued that neither filing unmeritorious claims nor providing improper or ineffective service to J constituted simulating legal process. Regarding the three counts of attempted aggravated first-degree theft by deception, defendant argued that the state had failed to meet its burden. In particular, defendant argued that the evidence was insufficient to show a fraudulent intent, because defendant "believed that he had a valid dispute regarding injury to his [vehicle]," had obtained "an actual judgment certified by the court," and had later written a letter to the court requesting dismissal of his claims.

The trial court summarily denied defendant's MJOA and subsequently found defendant guilty on all charges, explaining:

"I find that, when considered together, there are significant factors that lead to a conclusion that these are not run of the mill small claims civil cases where there have been inadvertent errors made.

"And some of those factors are the fact that there were multiple filings made on the same claim, the fact that there was not a proper service regarding the first suit and subsequent dismissal rather than attempting to correct that service error. The fact that relevant documents were not enclosed in the certified mail serving, purporting to serve notice of these suits and suits two and three that we have been discussing here today. The fact that the defendant claimed far in excess of any potential legitimate claim and, in fact, allowed judgment to be taken in the sum, the total sum of $10,000 [each] as opposed to reducing that claim, which he testified [] he knew was in excess of what he was actually owed if one believes that he had a legitimate civil claim against [J].

"The fact that the defendant attempted to get the victim's bank account number, the offer to pay for or reimburse the victim for fraudulent checks without making any claim or demand for offset for defendant's now purported damage to his vehicle, testimony regarding the fact that there were multiple filings because there were mistakes in

those filings that made no sense whatsoever. I don't find that defendant's testimony was credible in this case.

"I do find defendant guilty with regard to each of the six counts, One through Six. It's clear from the evidence received by the Court that this—these lawsuits were carried out with fraudulent intent from beginning to end."

Defendant now appeals, arguing that the record does not contain legally sufficient evidence to support those convictions and, therefore, the trial court erred by denying his MJOA on all six counts.

### III.   ANALYSIS

We begin our analysis by addressing the offense of simulating legal process, concluding that, because defendant's acts do not fall within the conduct proscribed by ORS 162.355, the trial court erred when it denied his MJOA as to that offense. We then address the offense of attempted aggravated first-degree theft by deception under ORS 164.085, concluding that the trial court did not err in denying defendant's MJOA as to Counts 3 and 5 of that offense, but erred in denying defendant's MJOA as to Count 1.

### A.   *Simulating Legal Process, ORS 162.355*

With respect to his convictions for simulating legal process (Counts 2, 4, and 6), defendant contends on appeal that "none of the documents delivered by defendant falsely simulated, in form and substance, civil or criminal process within the meaning of ORS 162.355, and that "analysis of the text, context, and legislative history of [ORS 162.355] reveals that the legislature intended to criminalize the delivery of legal documents that falsely imitate, in structure and content, the kinds of documents that would be issued by a legitimate court"—*i.e.*, "fake legal documents."

In its briefing, the state responds that—viewing the facts in the light most favorable to the state—the trial court did not err in denying defendant's MJOA as to Counts 2, 4, and 6. The state contends that defendant's conduct constitutes falsely simulating legal process because he deliberately sent irrelevant documents to J in lieu of proper service documents in order to mislead J about the existence of the small-claims suits and to defraud J out of $10,000 in each of

those suits. At oral argument, however, the state acknowledged that—unlike his second and third suits against J— defendant did not send any "fake" summons to J in the first suit; therefore, the state conceded, the evidence was legally insufficient to sustain conviction on Count 2 (relating to defendant's first small-claims suit against J) and that the trial court erred in that regard.

We agree with and accept the state's concession as to Count 2; consequently, we focus our analysis on defendant's remaining convictions for simulating legal process—*i.e.*, Counts 4 and 6 (relating to defendant's second and third small-claims suits against J).

The parties' dispute concerns the scope of ORS 162.355, which is a matter of statutory construction. In construing a statute, "the paramount goal [is] discerning the legislature's intent," which we do by examining the statute's text and context, along with relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

The text of ORS 162.355 provides, in part:

"(1)  A person commits the crime of simulating legal process if, with the intent to harass, injure or defraud another person, the person knowingly issues or delivers to another person any document that in form and substance falsely simulates civil or criminal process.

"(2)  As used in this section:

"(a)  'Civil or criminal process' means a document or order, including, but not limited to, a summons, lien, complaint, warrant, injunction, writ, notice, pleading or subpoena, that is issued by a court or that is filed or recorded for the purpose of:

"* * * * *

"(C)  Directing a person to appear before a court or tribunal[.]"

As relevant to this case, that text refers to documents such as "a summons" or "notice" issued, filed, or recorded for the purpose of "[d]irecting a person to appear before a court or tribunal." That text also provides that, for criminal liability to attach, the document must falsely "simulate" the

form and substance of civil or criminal process. Though not defined by statute, the term "simulate" ordinarily means "to give the appearance of **:** feign, imitate," *Webster's Third New Int'l Dictionary* 2122 (unabridged ed 2002), and "[t]o assume the mere appearance of, without the reality; to assume the signs or indications of, falsely; to counterfeit; feign; imitate; pretend," *Black's Law Dictionary* 1631 (3d ed 1933).

The context of ORS 162.355 provides further interpretive clues as to the legislature's intent. "The broader context of a statute *** includes prior versions of the statute and related statutes." *State v. Stamper*, 197 Or App 413, 419, 106 P3d 172, *rev den*, 339 Or 230 (2005). "Also considered part of the broader context of a statute is the legislative history of related statutes." *Id.* at 420.

The first version of ORS 162.355 was enacted in 1971, *see* Or Laws 1971, ch 743, § 210, and provided, in relevant part:

> "(1)  A person commits the crime of simulating legal process if he knowingly issues or delivers to another any document that in form and substance falsely simulates civil or criminal process."

That provision was drafted by the Criminal Law Revision Commission, and the "carefully kept records of the proceedings of the Commission and of its subcommittees *** provide a rich source for determination of the drafters' intent." *State v. Henderson*, 366 Or 1, 10, 455 P3d 503 (2019) (brackets and internal quotation marks omitted). In Tentative Draft No. 1 of ORS 162.355, the commission explained that "'[s]imulate' means: 'To assume the mere appearance of, without the reality; to assume the signs or indications of, falsely; to counterfeit; feign, imitate; pretend." Criminal Law Revision Commission, Subcommittee No. 1, Tentative Draft No. 1, Article 24, section 14 (Feb 1970) (citing *Black's Law Dictionary* 1555 (4th ed 1951)). Additionally, a report from the commission notes that ORS 162.355 "is designed to discourage the use of misleading documents in the debt collection process," and that "false simulation *of an official legal document* subverts the legitimacy of judicial administration by impairing public confidence in the genuine article." Commentary to Criminal Law Revision

Commission Proposed Oregon Criminal Code, Final Draft and Report § 210, 207 (July 1970) (emphasis added). Based on the above text and context, we understand that the legislature intended ORS 162.355 to proscribe issuing or delivering a fake, imitation, counterfeit, or pretend document that misleadingly appears to be a genuine legal document.

Additional legislative history relevant to ORS 162.355 supports that understanding. After its enactment in 1971, ORS 162.355 was amended by the 1997 legislature, in part, to define that statute's use of the phrase "criminal or civil process." *See* Or Laws 1997, ch 395, § 1. An attorney from the Oregon Department of Justice, Brenda JP Rocklin, explained the impetus for those amendments:

> "[House Bill 2310] is one of two bills proposed by the Oregon Department of Justice in response to anti-government activities that have escalated recently in Oregon and in other states. \* \* \*
>
> "House Bill 2310 addresses \* \* \* the false simulation of legal process \* \* \* that ha[s] arisen, at least in part, because of the emergence of 'common law courts.' A common law court is not a court at all, at least in the sense that a court is a governmental entity; it is just a group of private citizens who have appointed themselves as judges and juries[.]"

Testimony, House Committee on Judiciary, Subcommittee of Criminal Law, HB 2310, Jan 30, 1997, Ex B (statement of Brenda JP Rocklin, Assistant Attorney General, Criminal Justice Division (internal quotation marks omitted)).

Assistant Attorney General Rocklin also submitted an exhibit containing "examples of documents that are currently being used to falsely simulate civil or criminal process." *Id*. That exhibit includes various "common law court" documents that mimic conventional legal document formatting, case captioning, party-naming conventions, case numbering, and even official state seals. The exhibit contains documents that falsely purport to be, among other things, a "Summons," a "Notice to Appear," an "Order of Default," an "Affidavit," and a "Claim of Lien." *See* Exhibit C, House Committee on Judiciary, Subcommittee on Criminal Law, HB 2310, Jan 30, 1997 (accompanying statement of Assistant Attorney General Brenda JP Rocklin). None of those documents were genuine

legal documents, but those documents were designed to create the impression that they were.

Based on the foregoing text, context, and legislative history of ORS 162.355, we conclude that the offense of simulating legal process was intended to proscribe issuing or delivering a fake, imitation, counterfeit, or pretend document that appears to be, in both form and substance, a genuine legal document.

Applying that understanding of ORS 162.355 to the facts of this case, we further conclude that the trial court erred when it denied defendant's MJOA as to Counts 4 and 6 for simulating legal process. Even viewed in the light most favorable to the state, the record shows that the documents defendant mailed to J—which formed the basis for the state's charges against defendant in Counts 4 and 6—did not simulate civil or criminal process in form and substance within the meaning of ORS 162.355. The documents defendant mailed to J were copies of genuine court records concerning defendant's prior criminal prosecution for his use of fraudulent checks to obtain audio equipment from J's store. To be sure, those documents were irrelevant to, and failed to notify J about, the existence of defendant's small-claims suits against J. Yet those documents were not fake, imitation, counterfeit, or pretend documents that falsely appear to be, in both form and substance, genuine legal documents. For that reason, the trial court erred in denying defendant's MJOA as to Counts 4 and 6.

B.  *Theft by Deception, ORS 164.085*

We next address the issue raised in defendant's fourth through sixth assignments of error regarding attempted aggravated first-degree theft.

As noted above, the state charged defendant with three counts of attempted aggravated first-degree theft, ORS 161.405 (attempt); ORS 164.057 (aggravated first-degree theft),[5] and prosecuted those charges on a theory of theft

---

[5] ORS 161.405 provides, in part:

"(1) A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

by deception under ORS 164.085(1)(a) and (d). Each count corresponded, respectively, to defendant's first (Count 1), second (Count 3), and third (Count 5) small-claims suits against J. Because it is dispositive, we focus our analysis on ORS 164.085(1)(a).

With respect to his convictions for theft by deception, defendant argues, among other points, that "[t]he record shows that defendant never notified [J] of his claim[s] against him, much less tried to persuade [J] to give him $10,000"; therefore, defendant contends, he "did not take a substantial step to try to induce [J] to give him $10,000 by creating a false impression in [J]'s mind, and therefore defendant's actions did not constitute attempted theft by deception under subsection (1)(a)." Defendant also contends that legislative history relevant to ORS 164.085(1)(a) shows that that offense was intended to criminalize only creating a false impression of pecuniary significance in the victim's mind that induces the victim to transfer property to the offender and, therefore, does not apply to defendant's conduct.

The state responds that defendant attempted to commit aggravated first-degree theft "by fraudulently obtaining final judgments against [J] for $10,000 in damages, based on what he knew was a factually false claim, and then scheming (albeit without success) to obtain [J]'s bank-account information, which would have allowed him to execute on that judgment by garnishing [J]'s bank account," and that defendant's conduct involved deception, because defendant sent J "fake service documents, which lulled [J] into not being aware that defendant had filed the [small-claims] lawsuits."[6]

---

ORS 164.057 provides, in part:

"(1) A person commits the crime of aggravated theft in the first degree, if:

"(a) The person violates ORS 164.055 with respect to property, other than a motor vehicle used primarily for personal rather than commercial transportation; and

"(b) The value of the property in a single or aggregate transaction is $10,000 or more."

[6] As noted above, the state below prosecuted the attempted aggravated first-degree theft charges (*i.e.*, Counts 1, 3, and 5) on a theory of theft by deception

ORS 164.085(1)(a) provides:

"(1)   A person, who obtains property of another thereby, commits theft by deception when, with intent to defraud, the person:

"(a)   Creates or confirms another's false impression of law, value, intention or other state of mind that the actor does not believe to be true[.]"

Under that statute, we have previously explained that, "to convict defendant of attempted aggravated theft in the first degree, *** the state [must] prove that defendant (1) intentionally, (2) took a substantial step toward obtaining $10,000 or more of another's property, (3) by misrepresentation." *State v. McNall*, 307 Or App 435, 436-37, 476 P3d 1259 (2020), *rev den*, 367 Or 496 (2021). In other words, the state had to prove that, "with the intent to defraud," defendant attempted to "obtain[] property through some sort of false pretenses." *Monfore v. Persson*, 296 Or App 625, 634, 439 P3d 519 (2019).

As used in ORS 164.085, to "obtain" property "includes, but is not limited to, the bringing about of a transfer or purported transfer of property or of a legal interest therein[.]" ORS 164.005(3). And, generally speaking, "[a] false pretense is a false and fraudulent representation or statement *** made with knowledge of its falsity and with the intent to deceive and defraud, by reliance upon which representation or statement another is induced to part with money or property of value." *State v. Miller*, 47 Or 562, 568, 85 P 81 (1906).

under ORS 164.085(1)(a) and (1)(d). On appeal, the state argues for the first time in its briefing that defendant's convictions for that offense could be affirmed under ORS 164.085(1)(b) and (c). We decline to address those arguments on appeal, because the record might have developed differently had the state raised those arguments below, and the state neither asks this court to exercise discretion, nor explains why this court should exercise discretion, to reach those arguments. *See Outdoor Media Dimensions v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (affirming on alternate basis requires, among other things, "that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below"); *State v. Shields*, 309 Or App 516, 526, 482 P3d 784 (2021) (declining to address state's arguments raised for the first time on appeal where state "neither addressed *Outdoor Media Dimensions Inc.* conditions, nor explained why we should exercise our discretion").

Because it is responsive to defendant's arguments on appeal and, therefore, useful to our analysis, we provide some brief remarks about the legislative history relating to ORS 164.085(1)(a). The drafters of ORS 164.085 explained that, under paragraph (1)(a), "[t]he false impression may relate to law, value, intention or other state of mind," and that, "[i]n paragraph (a) the phrase, 'of law, value, intention or other state of mind,' which modifies the word 'impression,' is taken from Model Penal Code § 233.3." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 128, 136-37 (July 1970).

The commentary for section 233.3 of the 1962 Model Penal Code states that theft by deception "is intended broadly to include the many kinds of behavior that can amount to the obtaining of property by deception," which "includes misrepresentations of value, law, opinion, intention, or other state of mind, *as well as certain cases where the actor knowingly takes advantage of another's misinformation*," Model Penal Code, § 223.3, comments 1, 3, at 181, 184 (Official Draft and Revised Comments 1980) (emphasis added)[7]—the latter behavior being particularly relevant here, as defendant failed to properly inform J about the small-claims suits and took advantage of that circumstance to obtain the default judgments against J. The commentary goes on to state:

> "Schemes designed to create a false impression *** should thus be included even though there has been no false representation in the sense of affirmative statements that are in fact untrue[.] *** [*I*]*t is the falsity of the impression purposely created or reinforced that is determinative, rather than the falsity of any particular representations made by the actor.*"

Model Penal Code, § 223.3, comment 3, at 184-85 (emphasis added). That commentary is consistent with the explanation

---

[7] The above-cited official commentary to the 1962 Model Penal Code was published in 1980—*i.e.*, after ORS 164.085 was first enacted in 1971; however, our Supreme Court has relied on that commentary to discern the legislature's intent in revising the Criminal Code in 1971. *See, e.g.*, *State v. Fonte*, 363 Or 327, 345, 422 P3d 202 (2018) (examining Model Penal Code, § 223.6, comment 1, at 231-32 (Official Draft and Revised Comments 1980), in order "[t]o further explore the legislature's intent" behind the 1971 "consolidation of theft into a single offense").

given by the drafters of ORS 164.085: The offense of theft by deception concerns "the impression which the actor's total conduct has on the victim." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Preliminary Draft No 3, Art 14, § 5 (Apr 1968). Importantly, the Model Penal Code commentary also explains that

> "a conviction is not necessarily precluded if the deception is ineffective. *If the actor engages in conduct designed to deceive another for the purpose of obtaining his property but either does not obtain the property or does not obtain it as a result of the deception \*\*\*, there would be liability \*\*\* for attempt.*"

Model Penal Code, § 223.3, comment 1, at 181 (emphasis added).

With that understanding of ORS 164.085(1)(a) in mind, we conclude that the trial court did not err in denying defendant's MJOA as to Counts 3 and 5 (relating to his second and third small-claims suits against J), but did err in denying defendant's MJOA as to Count 1 (relating to his first small-claims suit against J).

Regarding Counts 3 and 5—viewing the evidence in the light most favorable to the state, and accepting all reasonable inferences and reasonable credibility choices—a rational finder of fact could have found the essential elements of attempted aggravated first-degree theft beyond a reasonable doubt. Specifically, on this record, a rational finder of fact could have found

- that defendant filed his second and third small-claims suits against J for $10,000 each—an amount that, according to defendant's own statements, vastly exceeded the value of the damage, if any, to his vehicle;

- that defendant falsely certified to the court that he had properly notified J of those claims and, instead, mailed irrelevant documents to J, intending to deceive or mislead J as to the existence of the claims against him;

- that defendant intended to mislead J about the existence of those claims in order to ensure that J would fail to appear in those cases;

- that, after misleading J as to the existence of those suits, defendant took advantage of J's failure to appear by obtaining default judgments totaling more than $20,000;

- that defendant planned to use those judgments—just as he had attempted to do previously in his case against Fred Meyer—to garnish J's bank account, using the bank account information that he tried (in part, successfully) to acquire from J; and

- that defendant abandoned his plan to defraud J only after he discovered that OSP detectives were investigating his claims against J.

On those facts, a rational finder of fact could find beyond a reasonable doubt that defendant, acting with the intent to defraud J, took a substantial step toward obtaining $20,000 from J by way of false impression, false pretense, or misrepresentation. *See McNall*, 307 Or App at 436-37 ("[T]o convict defendant of attempted aggravated theft in the first degree *** the state [must] prove that defendant (1) intentionally, (2) took a substantial step toward obtaining $10,000 or more of another's property, (3) by misrepresentation."). Therefore, the trial court did not err in denying defendant's MJOA as to Counts 3 and 5.[8]

We do not reach the same conclusion with respect to Count 1, which relates to defendant's first small-claims suit against J. The record shows that, in contrast to his second and third suits, shortly after defendant had filed the first suit, he dismissed it, and, consequently, he did not obtain any judgments against J in that case. Also unlike the second and third small-claims, J did not receive irrelevant documents from defendant in lieu of proper notice that misled

---

[8] As noted above, the state prosecuted defendant's theft charges under a theory of theft by deception under ORS 164.085(1)(a) and (1)(d). Because we conclude that the evidence was sufficient to sustain defendant's convictions on Counts 3 and 5 under ORS 164.085(1)(a), we do not discuss whether the evidence would also be sufficient to sustain the convictions on those counts under ORS 164.085(1)(d).

him as to the existence of the first suit. Further, nothing in the record shows that defendant created, reinforced, or took advantage of a false impression that J had regarding the first suit.

Concededly, defendant still *filed* that first claim, and he therein represented to the court that J owed him $10,000—again, an amount, by defendant's own admission, far in excess of any actual damage to his vehicle. Yet, we do not think defendant's filing of an unmeritorious small-claims suit, without more, constitutes a substantial step toward the commission of theft by deception under ORS 164.085(1)(a). *Cf. State v. Kyger*, 369 Or 363, 370, 506 P3d 376, *adh'd to as modified on recons*, 369 Or 604, 509 P3d 112 (2022) ("[T]o be a substantial step the act must be strongly corroborative of the actor's criminal purpose"—*i.e.*, "defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose." (Internal quotation marks omitted.)).

To the extent that the trial court denied defendant's MJOA as to Count 1 based on the state's alternate theory at trial that defendant's conduct constituted "sell[ing] or otherwise transfer[ing] or encumber[ing] property, [and] failing to disclose a lien" under paragraph (1)(d) of ORS 164.085, we conclude that the evidence was also legally insufficient to support conviction for Count 1 on that theory, because nothing in the record indicates that, with respect to the first small-claims suit, defendant sold, otherwise transferred, or encumbered property to J without disclosing to J a lien or other legal impediment on that property.

Accordingly, we conclude that the trial erred in denying defendant's MJOA as to Count 1.

Convictions on Counts 1, 2, 4, and 6 reversed; remanded for resentencing; otherwise affirmed.