468 January 31, 2024 No. 55

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

LANDWATCH LANE COUNTY,
*Respondent,*

*v.*

LANE COUNTY,
*Respondent,*
*and*

Kim HELSEL,
*Petitioner.*

Land Use Board of Appeals
2023037; A182319

Submitted November 7, 2023.

Bill Kloos filed the brief for petitioner.

Sean Malone filed the brief for respondent LandWatch Lane County.

No appearance for respondent Lane County.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

## PAGÁN, J.

Petitioner seeks judicial review of a final opinion and order issued by the Land Use Board of Appeals (LUBA).[1] Petitioner challenges LUBA's determination that ORS 197.307(4) applied only to housing development on land within an urban growth boundary, and, therefore, that it did not apply to petitioner's application to build a relative farm help dwelling on land zoned for exclusive farm use (EFU).[2] As a result, according to LUBA, petitioner was not relieved from compliance with county requirements for building a relative farm help dwelling. Based on the statute's text, context, and legislative history, we hold that ORS 197.307(4) applied only to housing development on land within an urban growth boundary. We therefore affirm.

We review LUBA's order to determine whether it is "unlawful in substance or procedure[.]" ORS 197.850(9)(a). "A LUBA order is unlawful in substance 'if it represent[s] a mistaken interpretation of the applicable law.'" *Kine v. Deschutes County*, 313 Or App 370, 372, 496 P3d 1136, *rev den*, 369 Or 69 (2021) (quoting *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001)). We review LUBA's construction of a statute for legal error. *1000 Friends of Oregon v. Clackamas County*, 309 Or App 499, 504, 483 P3d 706, *rev den*, 368 Or 347 (2021).

We begin with some relevant background facts. Petitioner applied to Lane County for approval of a relative farm help dwelling on land zoned EFU. Permitted uses in an area zoned EFU include:

"[a] dwelling on real property used for farm use if the dwelling is occupied by a relative of the farm operator or the farm operator's spouse, which means a child, parent, step-parent, grandchild, grandparent, stepgrandparent, sibling,

---

[1] Before LUBA, Landwatch Lane County was the petitioner, Lane County was the respondent, and Kim Helsel was the intervenor-respondent. Here, Kim Helsel is the petitioner and Landwatch Lane County is the respondent.

[2] ORS 197.307(4) was amended in 2017 and those amendments became effective on August 15, 2017. Or Laws 2017, ch 745, §§ 5, 14. Unless otherwise specified, when we refer to ORS 197.307(4), we are referring to the version that became effective on August 15, 2017. That subsection of the statute was subsequently amended in 2023, *see* Or Laws 2023, ch 533, §§ 1, 2. However, our focus is on the version enacted in 2017.

> stepsibling, niece, nephew or first cousin of either, if the farm operator does or will require the assistance of the relative in the management of the farm use and the dwelling is located on the same lot or parcel as the dwelling of the farm operator."

ORS 215.213(1)(d). The Land Conservation and Development Commission (LCDC) has adopted rules governing relative farm help dwellings. *See* OAR 660-033-0130(9) (containing requirements to qualify for a relative farm help dwelling). Lane County has adopted code provisions implementing the rules. *See*, *e.g.*, Lane Code (LC) 16.212(8)(b) (setting out qualifications for a relative farm help dwelling).

A planning director approved petitioner's application for a relative farm help dwelling and a county hearings officer affirmed the decision. The hearings officer applied ORS 197.307(4), which is one of Oregon's "needed housing statutes." *Warren v. Washington County*, 296 Or App 595, 597, 439 P3d 581, *rev den*, 365 Or 502 (2019). That statute sought to remove restrictions on the development of housing by requiring local governments to apply "clear and objective" standards. *Id*. As a result of applying that statute, the hearings officer determined that petitioner was not required to comply with the discretionary approval criteria in LC 16.212(8)(b).[3] Landwatch Lane County petitioned LUBA for review, asserting that the hearings officer had misconstrued applicable law by applying ORS 197.307(4) to review of a relative farm help dwelling on farmland outside of an urban growth boundary. LUBA ultimately reversed and remanded. LUBA determined that ORS 197.307(4) applied only to housing development within an urban growth boundary, and, therefore, it did not apply to the application for a dwelling on land zoned EFU.[4] Thus, as a result of LUBA's

---

[3] The parties do not challenge the hearings officer's determination that those criteria are not clear and objective. As explained by the hearings officer, the approval criteria for a relative farm help dwelling consist of four elements: "(1) the dwelling must be occupied by a relative of the farm operator; (2) there is an existing commercial farm operation; (3) the farm operator must continue to play the predominant role in the management of the farm; and (4) the assistance of the relative is required by the farm operator." Having determined that those criteria were not clear and objective, the hearings officer did not require petitioner to satisfy them before affirming the planning director's approval of the application.

[4] In a concurring opinion, one of the LUBA board members determined that whether or not the statute applied to housing on land within urban growth boundaries, it did not apply on land zoned EFU. Because we conclude that the

decision, the county will be required to consider and apply the discretionary approval criteria before approving the application, including, for example, considering whether the dwelling will be occupied by a relative of the farm operator and whether that operator will continue to play the predominant role in management of the farm.

On judicial review, the sole assignment of error concerns whether LUBA correctly construed the scope of ORS 197.307(4). "To assess petitioner's statutory construction argument, we examine the text and context of ORS 197.307(4) as amended in 2017 and, to the extent it appears useful, the legislative history. We begin with the statute's text, which is the most persuasive evidence of the legislature's intent." *Warren*, 296 Or App at 599 (citation and internal quotation marks omitted).

The text of ORS 197.307(4) provided, in relevant part, that "a local government may adopt and apply only clear and objective standards, conditions and procedures regulating the development of housing, including needed housing." Dictionary definitions of "housing" include "shelter, lodging," and "dwellings provided for numbers of people or for a community." *Webster's Third New Int'l Dictionary* 1097 (unabridged ed 2002).

Petitioner argues that the statutory text was plain and unambiguous, and that the statute applied broadly to any application for "housing," including an application for a relative farm help dwelling on farmland. According to petitioner, LUBA impermissibly usurped the role of the legislature and essentially amended the statute when LUBA determined that the statute did not apply to an application for a dwelling on land zoned EFU. We are not persuaded by petitioner's argument.

In *Warren*, we construed the same statutory text. 296 Or App at 599. We explained:

"Nothing in the wording of that provision suggests that the requirement that local governments regulate housing development only through 'clear and objective' standards

_____

majority opinion correctly interpreted the statute, we do not address the conclusions advanced in the concurring opinion.

applies only to housing development on 'buildable land.' To the contrary, ORS 197.307(4) plainly states that the 'clear and objective' requirement applies broadly to local governments' application of standards, conditions, and procedures 'regulating the development of housing' generally, including 'needed housing.' Reading that provision to apply only to housing that is developed on buildable land would impermissibly insert a limitation on the provision's scope[.]"

*Id.* at 599-600. Because the legislature had amended the statute in 2017 to apply to "housing, including needed housing," and because the legislature removed the reference to "buildable land," those changes certainly expanded the statute's scope.

Nevertheless, *Warren* did not address whether the statute applied to all housing regardless of the location. *Warren* concerned an application for approval of a subdivision on land that was included in Metro's Buildable Land Inventory.[5] 296 Or App at 596-97 n 2. That land appears to have been within an urban growth boundary because Metro is required to "'[i]nventory the supply of buildable lands within the urban growth boundary and determine the housing capacity of the buildable lands.'" *Housing Land Advocates v. LCDC,* 311 Or App 326, 329, 492 P3d 765, *rev den*, 368 Or 702 (2021) (quoting ORS 197.296(3)(a)). Thus, although the legislature expanded the scope of ORS 197.307(4) in 2017, it is less clear that the legislature intended to apply "clear and objective standards" to applications for housing development on farmland outside an urban growth boundary.

Because the text of the statute does not resolve the issue, we consider the statute's context. Statutory context includes other parts of the same statute, other relevant statutes, and other parts of the same bill. *See Unger v. Rosenblum*, 362 Or 210, 221, 407 P3d 817 (2017) ("[W]e do not consider the meaning of a statute in a vacuum; rather, we consider all relevant statutes together, so that they may be interpreted as a coherent, workable whole."); *see also Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e

---

[5] Metro is a metropolitan service district that includes land in Clackamas, Multnomah, and Washington counties, and one of its responsibilities is the adoption of a regional urban growth boundary. *Housing Land Advocates v. LCDC,* 311 Or App 326, 328, 492 P3d 765, *rev den*, 368 Or 702 (2021).

construe each part [of a statute] together with the other parts in an attempt to produce a harmonious whole."); *see also* Hon. Jack L. Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 640 (2019) ("The idea that the legislature was likely aware of other parts of the 'same statute' refers to other parts of the same bill[.]").

Here, the 2017 amendments to ORS 197.307 were part of Senate Bill (SB) 1051 (2017),[6] which, among other changes, added language to ORS 215.416 and ORS 227.175. Or Laws 2017, ch 745, §§ 2, 3, 5. ORS 215.416(4) was amended to include paragraph (b), which provided:

> "(b)(A)  A county may not deny an application for a housing development located *within the urban growth boundary* if the development complies with clear and objective standards, including but not limited to clear and objective design standards contained in the county comprehensive plan or land use regulations.

> "(B)  This paragraph does not apply to:

> "(i)  Applications or permits for residential development in areas described in ORS 197.307(5); or

> "(ii)  Applications or permits reviewed under an alternative approval process adopted under ORS 197.307(6)."

Or Laws 2017, ch 745, § 2 (emphasis added). ORS 227.175(4) was amended in the same way to provide that a city may not deny an application for a housing development located within an urban growth boundary if the development complies with clear and objective standards, and it included the same exclusions for applications or permits reviewed or considered under ORS 197.307(5) and ORS 197.307(6). Or Laws 2017, ch 745, § 3. And ORS 197.307(4), the statute at issue here, was amended to expand the kinds of housing for which local governments were required to adopt clear and objective regulatory standards. Or Laws 2017, ch 745, § 5. At that time, the legislature would have understood that local governments include cities and counties. *See* ORS 197.015(13) (2017) ("'Local government' means any city, county or metropolitan service district * * * or an association

---

[6]  The relevant bill was introduced as House Bill (HB) 2007 (2017), but it was enacted as SB 1051 (2017). *See* Or Laws 2017, ch 745.

of local governments performing land use planning functions ***.").[7] Thus, based on the concurrent amendments to ORS 215.416 and ORS 227.175, the most plausible reading of ORS 197.307(4) is that it was also intended to apply only to the development of housing within an urban growth boundary. *See Unger*, 362 Or at 221 (we interpret relevant statutes together "as a coherent, workable whole").

The legislative history of the 2017 amendments provides the clearest indication of what the legislature intended in this instance. Representative Tina Kotek, who was Speaker of the House in 2017, provided testimony in support of HB 2007, the bill that became SB 1051. Kotek explained that the goal of the bill was to remove barriers to the development of affordable housing. Testimony, House Committee on Human Services and Housing, HB 2007, Apr 13, 2017 (statement of Rep Tina Kotek). According to Kotek, the bill

> "will require cities and counties to approve applications that meet clear and objective standards as outlined in local zoning or planning codes *within urban growth boundaries*. I understand that some cities have concerns about having to state clear and objective standards, but I have also heard from cities that have no issue with this requirement because it is their status quo. It is possible to have a permitting process that allows for local control regarding design and clear and objective standards related to those design preferences."

*Id*. (Underscoring in original; emphasis added.) A summary of the bill prepared for the same hearing stated that the bill addressed applications for housing within urban growth boundaries. Summary, Taylor Smiley Wolfe, Office of the Speaker of the House, House Committee on Human Services and Housing, Apr 13, 2017. At another public hearing on HB 2007, Representative Duane Stark testified:

> "Think of the alternative, if we need more homes, we have a couple of options, we can build inside the *** UGB [urban growth boundary] or we can build outside it. And I haven't seen a lot of fans in this state that want to go out onto farmlands, that want us to sprawl out into rural communities;

---

[7] ORS 197.015 was subsequently amended by Or Laws 2023, chapter 13, section 76.

and instead, we say *** let's make it difficult to build *** outside those limits but also let's make it so that there are good, productive, thought out, strategic ways to build within the urban growth boundary."

Audio Recording, Joint Committee on Ways and Means, Subcommittee on Natural Resources, HB 2007 A, June 22, 2017, at 39:07 (comments of Rep Duane Stark), https://olis. oregonlegislature.gov (accessed January 23, 2024). That legislative history provides strong support for LUBA's conclusion that ORS 197.307(4) addressed housing on land within an urban growth boundary.

In arguing against reliance on those legislative history materials, petitioner quotes from *State v. Gaines*, 346 Or 160, 173, 206 P3d 1042 (2009), in which the Supreme Court indicated that "[w]hen the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different." But, in *Gaines*, the Supreme Court also pointed out that

"we no longer will require an ambiguity in the text of a statute as a necessary predicate to the second step—consideration of pertinent legislative history that a party may proffer. Instead, a party is free to proffer legislative history to the court, and the court will consult it after examining text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis."

*Id*. at 171-72. In addition, "a party *** may use legislative history to attempt to convince a court that superficially clear language actually is not so plain at all—that is, that there is a kind of latent ambiguity in the statute." *Id.* at 172.

Here, petitioner suggests that the language of ORS 197.307(4) was plain and unambiguous, but petitioner's own interpretation of the statute relies on its context because petitioner argues that the differences between earlier versions of the statute, which included reference to housing development on "buildable lands," shows that we must construe the version enacted in 2017 more broadly. *See State v. Bostwick*, 319 Or App 762, 772, 512 P3d 855 (2022) (stating that the context of a statute includes prior versions of the

statute). Petitioner's own reliance on the statute's context undermines petitioner's suggestion that the text of ORS 197.307(4) was plain and unambiguous.

Petitioner urges us to adopt an expansive reading of ORS 197.307(4), but "the fact that a statutory provision describes something in relatively broad terms does not always mean that the legislature intended the most expansive meaning possible." *Lake Oswego Preservation Society v. City of Lake Oswego*, 360 Or 115, 129, 379 P3d 462 (2016). We decline petitioner's invitation to interpret the statute in a manner that would permit counties to dispense with the discretionary approval criteria set out in ORS 215.213, and in related LCDC rules and county code provisions that address relative farm help dwellings on land zoned EFU. Focusing on the context and the legislative history of the 2017 amendments, we conclude that ORS 197.307(4) applied only to housing within an urban growth boundary.[8] Consequently, it did not apply to petitioner's application for a relative farm help dwelling on land zoned EFU, and it did not relieve petitioner from compliance with the requirements for such a dwelling contained in the Lane Code.

Affirmed.

---

[8] The parties also point to subsequent amendments of the statute, which clarify that it applies to housing, including needed housing, on land within an urban growth boundary. Or Laws 2023, ch 533, § 1. Generally, later enacted statutes are not relevant context for what the legislature intended earlier. *See*, *e.g.*, *Stull v. Hoke*, 326 Or 72, 79-80, 948 P2d 722 (1997). Therefore, we do not rely on the subsequent amendments. However, to the extent that the earlier text alone was ambiguous when taken out of context, we separately note that the 2023 amendments clear up that ambiguity.